CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*
BRAZIL.

## Opinion delivered November 24, 1924.

TAXATION—VOLUNTARY PAYMENT NOT RECOVERABLE.—Where a rail-
road company, without protest or objection, paid taxes illegally
levied on its railroad property on a valuation above that certi-
fied by the Tax Commission, it cannot recover the excess as if
paid under duress, as the collector, on default, could only return
the property delinquent, in which case a suit would be brought in
which the defense of illegality of the tax could be made.

Appeal from Perry Circuit Court; *Marvin Harris,*
Judge; affirmed.

*Thos. S. Buzbee, Geo. B. Pugh* and *H. T. Harrison,*
for appellant.

The action of the county levying court and the
officers of Perry County in increasing the valuation of
appellant's property above that certified out by the State
Tax Commission was unauthorized and illegal. 127 Ark.
349; 130 Ark. 261; 146 Ark. 551; 258 S. W. 609. The pay-
ment of the tax in the instant case was not made with full
knowledge of all the facts rendering the demand illegal.
The action of the levying court raising the valuation
certified out by the State Tax. Commission was taken
without notice to appellant.

*J. E. Brazil* and *W. H. Donham,* for appellee.

The taxes sought to be recovered back were vol-
untarily paid, with full knowledge of all the facts and
circumstances, and cannot now be recovered. 107 Ark.
24; 37 Cyc. 1178.

SMITH, J. This cause was heard in the court below
on a stipulation, from which we copy the following
recitals:

Appellant operates a line of railroad through Perry
County.

The State Tax Commission, in manner and form
prescribed by law, certified to the tax assessor of that
county the valuation of the railroad's property located
therein, upon which valuation the taxes were to be

assessed for the year 1922, and the valuation so certified was $791,442.

Subsequently the levying court of Perry County, at its October term, 1922,. increased the valuation of the railroad's property 100 per centum above the valuation certified out by the Tax Commission for the county taxes only, but the valuation for other purposes was unchanged. No notice of this action was ordered or was given, but, pursuant to this action of the levying court, the valuation for county taxation purposes was extended against the property of the railroad amounting to $1,582,884, which action resulted in an increase of $3,957.21 in the amount of taxes levied against the property of the railroad.

The action of the quorum court was taken pursuant to an order of mandamus issued in the United States District Court for the Eastern District of Arkansas, Western Division, on the 3rd day of December, 1920, commanding the. assessing officers and the county collector to raise the valuation of all property in Perry County 100 per centum for county purposes, said mandamus being issued in aid of a judgment rendered in said court in favor of one Con Grabel against the county.

The revenues derived from the increased valuation were to be applied on said judgment, and were applied from year to year. On July 17, 1922, there was due and unpaid on said judgment the sum of $477.19, at which time the collector issued his check for $1,269.93, payable to the order of Grabel, to apply on said judgment. Said check was drawn against the special fund realized from the collection of taxes for the year 1921 in the year 1922, and represented the balance of the special fund remaining in the hands of the collector on the day the check was drawn. The check was never delivered to Grabel, but was cashed by some one without authority.

A representative of the railroad applied to the collector of taxes for a statement of the railroad's taxes, and the statement was furnished on April 9, 1923, as

requested, and was based upon the increased valuation made by the levying court, and check for these taxes was remitted to the collector, and this was done without any protest or objection. The railroad company made no objection to the levying of the tax complained of as provided in §§ 9870, 9871 and 9872, C. & M. Digest. At the time the payment was made the railroad was not advised that there had been collected in the year 1922, for the year 1921, sufficient taxes to pay the judgment in favor of Grabel.

At the time of the commencement of this suit the defendant collector had in his hands, over and above the amount the railroad would have been required to pay upon the valuation as certified out by the Tax Commission, a sum of money equal to the excess thereof which the railroad had paid.

The parties alleged to have been concerned in cashing, without authority, the collector's check to the order of Grabel, as well as the banks through whose agency the collection was made, were made parties defendant.

Attached to the stipulation were exhibits showing the order of the levying court and the mandamus from the Federal court, which last-mentioned order contained the following provision: "It appearing that an increase in the assessment of property above described for the county general purposes is all that is required to enforce the judgment of this court, this court does not assume jurisdiction further; and this order shall not apply to said assessment for any other purpose."

There was a prayer in the complaint for a judgment directing the collector to return to the railroad the excess taxes sued for, and, upon submitting the cause on the stipulation set out above, each side asked that judgment be rendered in its favor. Judgment was rendered in favor of the defendant, and the railroad company has appealed.

It is conceded that the taxes assessed upon the increased valuation were illegally levied. This concession is based upon the authority of the cases of *State to use of Craighead County* v. *St. L. S. F. R. Co.*, 162 Ark.

443, 258 S. W. 609; *Dickinson* v. *Housley,* 130 Ark. 261; and *Nelson* v. *Meek,* 127 Ark. 349.

Several questions have been raised in the briefs which we find it unnecessary to consider, as, in our opinion, the payment was a voluntary one, the point being ruled by the opinion in the case of *Brunson* v. *Board of Directors,* 107 Ark. 24. There an owner of land in an improvement district paid to the collector of taxes certain assessments levied against his land. The assessments were illegal, and the payment was made under protest. The statute under which the collections were being made provided that, if the taxes were not paid within the time limited by law for that purpose, the collector should file a list of the lands upon which the taxes had not been paid, and thereafter the improvement district would bring suit to enforce payment. The statute authorizing these suits provided that a decree directing the sale of the lands so returned delinquent should be entered to enforce the payment of the delinquent taxes. But the collector did not sell for the delinquent taxes; he merely reported the delinquency, and the authority to make the sale was derived from the decree which was to be rendered after the notice provided by the statute had been given to the landowner, in which the lands were adjudged to be delinquent, and were ordered to be sold unless the landowner paid the sum adjudged against the property within the time specified by the decree.

In that case a landowner whose lands had been taken out of the improvement district by an act of the Legislature, paid the taxes which had been illegally assessed against his land, under protest, and thereafter brought suit to recover them.

Under the facts stated we there held that the taxes were not paid under duress or compulsion. Upon the authority of *Lamborn* v. *County Commissioners,* 97 U. S. 181, and *Railroad Company* v. *Commissioners,* 98 U. S. 541, we approved the following rule: "Where a party pays an illegal demand, with full knowledge of all the

facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary.''

After thus laying down the law, we said that the landowner ''was in no immediate danger of being disturbed in the possession of his property, and he would not have jeopardized it by not paying the taxes at the time he did pay them. No irreparable injury could have resulted from his not paying them at the time. If he had refused payment to the collector, the latter had no authority to levy upon and seize his land to enforce payment. The statute requires suit to be brought by the board of directors of the levee district to collect the taxes. In the event of such suit, the plaintiff would have his day in court and the opportunity to plead and to offer proof in support of his claim that the taxes were illegal. He could have interposed the same defense to that action which he now asserts as the basis for his recovery in the present action. To hold otherwise would put it in the power of the party paying under protest to choose his own time and opportunity for commencing suit. To permit a person to ignore the remedies permitted under the statute against the alleged illegal taxes upon real estate and pay them, with knowledge of all the facts, and then allow him to recover them back by suit, would be inconsistent with our tax laws. We are aware that there is a sharp and irreconcilable conflict in the authorities on this question, but we believe that our decision is in accord with the weight of authority on the subject.''

What we there said is applicable here. The collector of Perry County would not have seized or sold the property of the railroad if the payment had not been made. The collector of that county could only have done what

the collector of the improvement district did, to-wit: return the property as delinquent, after which a suit would have been necessary before the property of the railroad could have been sold for the nonpayment of the taxes. Sections 10204 *et seq.*, C. & M. Digest. And in such a suit, as was said in the Brunson case, *supra,* the railroad could have made the defense that the taxes were illegal.

A different proceeding is provided by statute for enforcing the lien for taxes against railroads from that employed against the lands of individuals. As to such owners the collector himself makes the sale, after notice has been given as provided by statute; whereas the collector of county taxes merely returns the property of a railroad as delinquent, as was the case in *Brunson* v. *Board of Directors, supra,* and the rule announced in that case therefore applies to the payment made by the railroad company in the instant case.

Our attention is called to the case of *Dickinson* v. *Housley,* 130 Ark. 259, where, under very similar facts, we permitted the receiver of the appellant railroad company to recover taxes illegally levied. An examination of that case and of the briefs filed by counsel shows, however, that the question of duress was not there raised, and our decision and opinion covered only the points raised by counsel. Had this point been raised, or had it suggested itself to us in our consideration of the case, we would necessarily have held, upon the authority of *Brunson* v. *Board of Directors, supra,* that the payment was a voluntary one, and that the taxes paid could not be recovered on that account.

It follows therefore that the complaint of the railroad praying judgment for the taxes so paid was properly dismissed, and the judgment in favor of the defendant is therefore affirmed.