## STATE EX REL. NELSON *v.* MEEK.

### Opinion delivered February 5, 1917.

1. TAXATION—BASIS OF ASSESSMENT—CONSTITUTIONAL LIMITATION.— The Constitution of 1874 does not compel an assessment of property according to full value, the matter of assessment being left to the law-making body.

2. TAXATION—VALUATION OF PROPERTY.—Only two specific mandates are contained in the Constitution as to the valuation of property for taxation, one is that a valuation basis must be adopted, and the other is that in fixing the value the same shall be equal and uniform throughout the State.

3. TAXATION—VALUATION—LEGISLATIVE POWER.—The Legislature may fix any basis of valuation that may be found fair or necessary, either at the full valuation in money or any less percentage of valuation, provided that the element of uniformity throughout the State is preserved.

4. TAXATION—VALUATION—UNIFORMITY.—Although a statute requires all property in the State to be assessed for taxation at its full value, it is a defense to an action to require the assessor in a certain county to assess the property in the county at its full value, that all the property in the other counties of the State was assessed at less than its full value.

5. TAXATION—UNIFORMITY—RIGHTS OF CITIZENS.—Citizens of one county may compel an assessment of their property for taxation in uniformity with the basis of assessment in the other counties of the State, but the assessor of one county can not be compelled to assess at a higher valuation than is done in the other counties of the State.

6. MANDAMUS—CONSTITUTIONAL INHIBITION.—Mandamus will not lie to compel a county assessor to value property for taxation in his county in a manner not in uniformity with the rest of the State, and in violation of an express direction from the State Tax Commission.

Appeal from Johnson Circuit Court; *A. B.ᴿPriddy,* Judge; affirmed.

*Warner & Warner,* for appellant.

1. The court erred in overruling the demurrer and in rendering judgment for defendants. Under our Constitution and laws it is the plain mandatory duty of the assessor and Board of Equalization to assess and equalize property subject to taxation at its true value in money. Const. Art. 16, § 5; *Ib.* §§ 9, 10; Kirby's Digest, §§ 6956, 6970; 43 Ark. 243, 257; Kirby's Digest, § 6974; 119 Ark. 362; 49 *Id.* 390; 116 *Id.* 206; Kirby's Digest, §§ 7004-8. The Tax Commission and the equalization board are bound by the mandate of the Constitution and laws and it was no defense that the Tax Commission advised the assessor or ruled that property should only be assessed at 50 cents on the dollar. Cases *supra;* Kirby and Castle's Digest, §§ 8456, 8457; Acts 1909, Act 257, § 12.

The Tax Commission is expressly required to use the "true and full value" basis. 233 Fed. 235-6; 221 *Id.* 289.

2. A plain legal duty is required; there is no discretion under the law and mandamus is the proper remedy. 221 Fed. 289; 177 Fed. 1; 43 Ark. 62; 45 *Id.* 121; 113 *Id.* 40; 7 Okla. 198; 191 Ill. 528; 44 *Id.* 240; 106 Fed. 459; 152 *Id.* 907; 166 *Id.* 677; 72 Ark. 27; 103 Fed. 418; 43 C. C. A. 261; 26 Cyc. 320.

The appellees *pro sese.*

1. The cardinal rule is that all property shall be assessed according to value and that the rate of taxation be equal and uniform. Const. Ark. 16, § 5. According to the first clause the assessment must be according to value in money. The second clause says "that value to be ascertained in such manner as the General Assembly shall direct." While value is the basis, it does not mean *full* value. The General Assembly was authorized to select and determine the means and method of placing a value or percentage on the property taxed for the purpose of assessment.

The rate must be uniform and equal and a system of assessors and boards of equalization have been provided. Act 257, Acts 1909. The State Tax Commission is an arm of the Legislature, and constitutional power is delegated over assessment and taxation, except as to the rate. 92 Ark. 492; Kirby's Digest, §§ 6970, 6074, 9956, 7004, 7008, etc. When the valuation is equalized with other property of the same kind property is taxed according to value. 92 Ark. 492. The Constitution does not require an assessment at 100 per cent., but merely that the assessment be on a basis of value, *equal and uniform.* 88 Fed. 350, 363.

2. The uniformity rule cannot be violated. 62 Ark. 461; 88 Fed. 350. The Jimmerson case, 222 Fed. 497, is not binding. 233 Fed. 235; 92 Ark. 492. Our own State courts are the final arbiter in the construction of our own Constitution and laws. Petitioner is seeking to compel the performance of a duty which does not exist, and from which this court will grant relief. 92 Ark. 492; 119 *Id.* 362, 372; 124 *Id.* 569.

McCULLOCH, C. J. This is an action instituted in the circuit court of Johnson county in the name of the State of Arkansas on the relation of J. L. Nelson, against W. A. Meek, the assessor of Johnson county, and against the county judge and the persons constituting the board of equalization of said county, to compel the defendants, by mandamus, to assess the property of the county for taxation at its true money valuation. It is alleged in the petition that the relator is the holder of certain warrants of the county, duly issued in pursuance to judgments of the county court; that he has obtained judgment on said warrants in the circuit court of Johnson county and the same has not been paid; that there is a large amount of floating scrip of Johnson county which is of depreciated market value by reason of the fact that the outstanding scrip largely exceeds the possible revenues of the county under the present system of taxation; that the assessor and board of equalization have heretofore valued the property of the county for taxation at only

fifty per cent. of its true valuation in money, and propose to continue to do so under future assessments unless otherwise directed; and it is further alleged that unless the assessing officers of the county be required to discharge their legal duty by assessing property at its true value in money there will be no means whereby the relator can secure payment of his said judgment against the county.

The defendants filed an answer admitting that the relator was the holder of the scrip as mentioned and described in the petition and had obtained judgment thereon, and also admitted that the assessments of valuation of property for taxation purposes had been on a basis of fifty per cent. of true valuation and would remain the same in the future, but alleged that said assessments of valuation were in accordance with assessments of other property in the other counties of the State and under the express direction of the State Tax Commission which had made an order fixing fifty per cent. as the proportionate valuation to be assessed on property for purposes of taxation.

The relator demurred to the answer, which was overruled, and he declined to proceed further and suffered a judgment dismissing the petition and he prosecutes an appeal to this court.

In the state of the pleadings just related the only question presented is whether or not the answer of the defendants set forth facts sufficient to justify them in assessing the property of Johnson county at less than its full value in money. It is contended on the part of the relator that the Constitution and laws of this State embody a specific command to the assessing officers to assess all property at its full valuation in money and that a refusal on the part of those officers to obey that command calls for compulsory action by the courts in behalf of those who are aggrieved by such dereliction. It therefore becomes important to inquire what the commands of our laws are with respect to the taxation of property, and the relation of those commands to each other.

The only provision of the Constitution bearing upon the question at issue reads as follows:

"All property subject to taxation shall be taxed according to value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value." Sec. 5, Art. 16.

(1) Counsel for relator erroneously assume that the above quoted provision of the Constitution amounts to a command to assess property at full valuation, but a consideration of the language used by the framers of the Constitution leads to the conclusion that no such meaning was intended. The only command embraced in this provision is that the property shall be taxed "according to value." That is to say, on a valuation basis and not on some other basis. The further provision is that the value is to be ascertained in such manner as the General Assembly shall direct, which shows that it was intended to be a matter for the Legislature to determine what the basis of the valuation should be and how it should be ascertained. There is no doubt of the power of the Legislature to provide for an assessment based on the full money valuation of property, not that the Legislature has so provided in the statutes which have been enacted since the adoption of the present Constitution, but it is equally clear that the Constitution itself does not compel an assessment according to full value, and it does, in fact, leave that matter entirely to the lawmakers. That is the effect of our previous decisions on that subject. In *Bank of Jonesboro* v. *Hampton*, 92 Ark. 492, we said:

"It is true the Constitution provides that all property subject to taxation shall be taxed according to its value, but this is done when the valuation is equalized with other property of the same kind in the county."

See also *Ft. Smith & Van Buren Bridge Co. Ex Parte*, 62 Ark. 461, and *Drew County Timber Co.* v.

*Board of Equalization*, 124 Ark. 569, in each of which cases this court ruled that an individual taxpayer was entitled to a reduction of his assessment so as to conform to the valuations placed upon other property in the county, notwithstanding the fact that his own property was then assessed at less than full value. The same interpretation has been placed upon similar provisions in the Constitutions of other States. *Taylor* v. *L. &. N. Rd. Co.*, 88 Fed. 350.

(2-3)   The only two specific mandates contained in the Constitution are, one that a valuation basis must be adopted, and the other that in fixing the value the same shall be "equal and uniform throughout the State." Aside from the constitutional limitations in those two respects the legislative will is left supreme, but any action of the Legislature looking to the ascertainment of the value of property for purposes of taxation, or in fixing the basis of taxation, must conform to that paramount command of the Constitution that the valuation must be equal and uniform throughout the State. In other words, the Legislature can fix any basis of valuation that may be found fair or necessary, either at the full valuation in money or any less percentage of valuation, provided that the element of uniformity throughout the State is preserved. And it is also readily seen that the action of executive officers in carrying out the methods of taxation prescribed under the statutes of the State must conform to the Constitutional commands of equality and uniformity. We have then this situation: The lawmakers have, in the statutes enacted, provided for a system of taxation in accordance with the constitutional plan of assessments "according to value" and have provided that the assessments shall be at the true and full valuation of property in money. Kirby's Digest, sec. 6974. And in order to conform to the constitutional command of uniformity and equality, there has also been provided an appropriate statutory method of equalization in the counties and throughout the State, of the valuations of property for purposes of taxation. The whole plan is outlined in

the various sections of the statute which provide for county boards of equalization, charged with the duty of examining the assessments of all classes of property in the county and raising or lowering same so as to make the assessments uniform; and in providing for the State Tax Commission which performs the functions of a State Equalizing Board with authority to raise or lower assessments by districts, counties or municipalities. Act 257, Act of 1909. The powers and duties of the Tax Commission as set forth in the Act, so far as they relate to the question now before us, are declared in the first subdivision of section 11 of the statute referred to above, which reads as follows:

"11.   To have and exercise general and complete supervision over the assessment and collection of taxes and the enforcement of the tax laws of the State, and over the several county tax assessors, tax collectors, county boards of review and equalization and other officers charged with the assessment and collection of taxes in the several counties of the State, to the end that all assessments on property, privileges and franchises in the State shall be made in relative proportion to the just and true value thereof, in substantial compliance with the law."

Also in section 12, which provides that the commission shall meet annually as a State Equalization Board on the second Monday in November "for the equalization of the taxable values of such personal or real property as may come before it by reason of report or otherwise;" that they "shall examine and compare the returns of the assessments of property in the several counties of the State and proceed to equalize the same so that all the taxable property in the State shall be assessed at its true value and that all property shall bear its equal and just proportion of the taxes of the different counties of the State."

It is further provided in the Act that when the valuation of property in any county, district or municipality, is found to be out of proportion with the values assessed in other localities, the Tax Commission may

"raise or reduce the same to its true, full and proportionate value." It is thus seen that the most important function of the Tax Commission and its first duty, is to preserve uniformity in the assessments throughout the various counties of the State, and that it is to sit annually as a Board of Equalization. It will be observed from a consideration of the language of the statute just quoted defining the duties of the Tax Commission, that it provides that the commission shall review the acts of other assessing officers to the end that the assessments of property in the State "shall be made in relative proportion to the just and true valuation thereof." It does not require complete attainment of the full valuation, nor absolute uniformity, but it recognizes the fact that valuations are merely relative and that uniformity is only an approximation, and that perfection in neither direction can be attained. It is readily seen, however, that uniformity is the dominant idea in the performance of the duties of the Tax Commission.

(4)    Now, the answer of the defendants in this case, as the assessing officers of Johnson county, is a confession that they have not literally obeyed the mandate of the statute which obviously provides for the assessment of all property at its true value, but it is also an assertion that in disobeying the statutory command they have done so in order to meet the constitutional requirement of uniformity and that this was done in accordance with the specific directions of the State Tax Commission under whom the county assessing officers are required to act. In other words, they justify the assessments at less than true value under the plea that it was necessary to do so in order to make the assessments uniform with those in other counties, and also to conform to the directions of the Tax Commission. To this the relator replies that there is a double command to assess the property at full value as well as on an equality with other property in the State, and that the derelictions of the assessing officers of other counties and of the Tax Commissioners in permitting it

to be done, afford no justification as against the rights
of a suffering creditor.

(5)    We are of the opinion that the answer of the
defendants is a sufficient one and that they are com-
pelled by the plain mandate of the Constitution to
assess property in the county in conformity with
valuations placed on such property in other counties,
regardless of the fact that it calls for an assessment at
less than full value.    Any other view of the matter
would work an injustice to the taxpayers of that
particular county and that, too, in manifest violation
of the constitutional guaranty.    Such is the necessary
effect of the decision of this court in *Ft. Smith & Van
Buren Bridge Co., supra.*    It is true that in that case the
court was dealing solely with the question of uniformity
within a single county, but the decision was that a tax-
payer whose property had been assessed at less than full
value had a remedy to compel a reduction where the
assessment was disproportionate with the assessments
of other property in the county.    Now, the constitu-
tional guaranty with respect to uniformity is not re-
stricted to county lines, for the express declaration is
that the valuations shall be "equal and uniform through-
out the State."    Therefore, when this court held in the
case just cited, that a taxpayer had the right to compel
the reduction of his assessments to conform to the assess-
ments of other property in the county, it necessarily
follows therefrom that the citizens of one county are
entitled to the same remedy to compel such reduction
as would afford equality and uniformity with assess-
ments of property in other counties in the State.    The
creation of the State Tax Commission was for the
purpose of providing just such relief, and if this court
should undertake to direct the assessing officers of
Johnson county to assess the property there at full value
regardless of the assessments in other counties, it would
create a conflict with the specific directions of the Tax
Commission, a tribunal which the lawmakers have
erected for the purpose of settling all such questions.

It is urged that this view of the question might lead to a disastrous result to the creditors of a county for the reason that various assessing officers of the State might conspire together to put the assessments down to a minimum so that the revenues would be wholly inadequate to discharge the obligations of the State and counties. This is a reflection on the taxation scheme of the State and on the officers who are selected to carry it out and it cannot be taken into consideration in the solution of the question now before us. No presumption can be indulged that all of the public officials of the State in the various counties who have to do with the assessment of property for taxation, will knowingly violate the duties imposed upon them by law. But even if it be conceded that hardships may occasionally result, it is one of those eventualities which one dealing with the State or its sub-agencies, have to take into account when they accept the obligations thereof. We do not by any means intend to say that the courts will afford no remedy for a refusal on the part of a public officer to discharge his duty, but we do say that there are some ills of a public nature for which the courts afford no relief and the argument just referred to relates to one of that kind. If that situation were to arise it could only be dealt with as a political or legislative matter and could not be corrected by the courts.

The relator relies principally upon the decision of the United States Circuit Court of Appeals for the Eighth Circuit, in the case of *United States* v. *Jimmerson*, 222 Fed. 489, where, in a case identical with the facts of the present case, that court held that a creditor of a county was entitled to the relief which we now deny to the relator in this case. It is regrettable that there should be a conflict in the decisions of courts exercising jurisdiction over the same territory, but we are very firmly convinced that the learned court rendering that decision reached the wrong conclusion. This court is the final arbiter in the construction of the Constitution and laws of this State and is not influenced in those matters by the decisions of other courts further than

the persuasiveness of the views expressed in those decisions. We do not know how far, if at all, the Federal Court was influenced in its decision by the fact that there was an express stipulation in the contract which was signed between the county and the complaining creditor that the property of the county should thereafter be assessed at its full and true value, but that was an element in the case which does not appear in the present one. We do not, however, think that fact alters the law on the subject as herein declared. The officers of the county who entered into the contract could create no greater obligation with regard to future assessments than the law itself imposed, and we are of the opinion that whether there was any such contract or not, the creditors have no right to compel the assessing officers to value the property in the county at such a percentage as would make the assessments in excess of the rate of valuation placed on similar property in other counties.

(6) Mandamus is the appropriate remedy to compel a public officer to perform all duties prescribed by law, but the remedy cannot be used as is asked in this case, for the purpose of compelling an officer to do that which he is required by the constitutional mandate and by the express direction of a superior tribunal, not to do.

We are of the opinion that the circuit court was correct in refusing the relief sought, and the judgment is, therefore, affirmed.