## ARKANSAS ELECTRIC COOPERATIVE CORPORATION v. ARKANSAS PUBLIC SERVICE COMMISSION

91-123                                   818 S.W.2d 935

Supreme Court of Arkansas
Opinion delivered November 11, 1991

*Wright, Lindsey & Jennings*, by: *N.M. Norton, Jr.*, for appellant.

*Lee McCulloch*, for appellee.

*Rose Law Firm, A Professional Association*, by: *M. Jane Dickey*, for intervenors Augusta, Gentry, and Newark School Districts.

JACK HOLT, JR., Chief Justice. This case involves an assessment of 1987 *ad valorem* taxes on properties of the Arkansas Electric Cooperative Corporation (Cooperative) by the Tax Division of the Arkansas Public Service Commission. After the Tax Division refused the Cooperative's request to lower its assessment, the Cooperative filed a formal petition asking the Commission for review. An administrative law judge (ALJ), sitting by designation of the Commission, conducted a public hearing and affirmed the Tax Division's assessment. The assessment was reaffirmed by the full Commission. The Cooperative subsequently appealed to the Pulaski County Circuit Court for relief. The trial court found that the Commission's decision that the Cooperative's property had been properly valued was supported by substantial evidence in the record. Thereafter, the Cooperative appealed to the Arkansas Court of Appeals.

This case was submitted to the court for its consideration on December 20, 1990. On May 6, 1991, the court of appeals certified this appeal to us under Ark. Sup. Ct. R. 29(4)(b) as presenting a question of significant public interest. On May 25th, we refused certification and returned the case to the court of appeals.

On June 26, 1991, the Court of Appeals, by per curiam, raised on its own motion certain jurisdictional questions and ordered the parties to file supplemental briefs addressing these matters. On October 10th, the court of appeals again certified this case to our Court.

The parties, by way of their supplemental briefs, argue as to the appropriate processes for appeal from the Commission's findings in light of Ark. Code Ann. § 23-2-423(a)(1) (1987), which provides that "[a]ny party to a proceeding before the commission aggrieved by an order issued by the commission in the proceeding may obtain a review of the order in the Court of Appeals of Arkansas . . .," as opposed to Ark. Code Ann. § 26-24-123(a) (1987), which provides that "[a]ny taxpayer aggrieved by the action or order of the Arkansas Public Service Commission respecting the assessment or equalization of property shall have the right of appeal to the circuit court and thence to the Arkansas Supreme Court."

These statutes are easily distinguishable, inasmuch as section 23-2-423 pertains to public utility regulatory matters and section 26-24-123 governs judicial review on Commission decisions concerning taxation matters, such as the case before us. Accordingly, the Cooperative's appeal from the Commission to the circuit court was correct procedure.

The legislature's placement of further appellate process in this court pursuant to section 26-24-123 was, however, inappropriate and cannot be followed to the extent that it conflicts with our per curiam opinion of February 24, 1986, where we declared that under Amendment 58 to the Arkansas Constitution, which created the court of appeals, and Rule 29 of the Rules of the Arkansas Supreme Court, we decide the appellate jurisdiction of the court of appeals, not the legislature.

We further noted that, while we respected the General Assembly's concern to expedite decisions of an administrative agency, we would not overlook the intent of Amendment 58 and our duty as an appellate court to see that any decision was fairly and completely reviewed once. With that observation, we amended Ark. Sup. Ct. R. 29(1)(c) and (d) to the effect that all appeals of Public Service Commission decisions should be first be made to the court of appeals subject to certain exceptions, none of

which apply in this instance.

Jurisdiction of this case, then, properly lies in the court of appeals. However, we will, to avoid further delay, retain jurisdiction pursuant to Rule 29(4)(b) since it is of significant public interest to expeditiously resolve matters of state taxation, especially where, as in this instance, school funding formulas are involved.

The Cooperative initially claims that the trial court erred in affirming the Tax Division's refusal to consider economic and functional obsolescence in valuing and assessing the Cooperative's property.

Arkansas Code Ann. § 26-26-1607 (1987) addresses the method of valuing property for the assessment of taxes and provides in pertinent part as follows:

> (a)   The valuation of the taxable property, both real and personal, of all . . . cooperatives, associations, and corporations required by law to be assessed by the Tax Division of the Arkansas Public Service Commission shall be made upon the consideration of what a clear fee simple title thereto would sell for under conditions which usually govern the sale of property of that character.

> (b)   The division in determining fair market value, insofar as other evidence and information in its possession does not make it appear improper or unjust for it to do so, shall ascertain and determine as nearly as it can and consider:

> (1)   Original cost less depreciation, replacement cost less depreciation, or reconstruction cost less depreciation. Proper consideration may be made for functional or economic obsolescence and for operation of nonprofitable facilities which necessitate regulatory body approval to eliminate;

> (2)(A)   The market value of all outstanding capital stock and funded debt, excluding current and deferred liabilities, except accumulated deferred income taxes, investment tax credits, and items associated therewith. A premium or discount to capital stock may be considered above or below the current market price where evidence

warrants.

(B)   In cases where the outstanding capital stock is not traded or is not capable of reasonably accurate determination, book values may be substituted;

(3)(A)(i)   The utility operating income after deduction of all actual income taxes paid, capitalized in the manner and at such rates as shall be just and reasonable, but in no event shall the capitalization rate be less than six percent (6%). The deduction from income of deferred income taxes, investment tax credits, and items associated therewith is specifically prohibited for purposes of this subsection.

(ii)   The utility operating income after the deduction of all income tax expense capitalized in a manner which recognizes the utility's ability to defer income taxes, utilizing accumulated deferred income taxes, investment tax credits, and items associated therewith as cost-free debt in the capital structure to determine the capitalization rate.

(B)   The utility operating income to be capitalized should be determined by reference to the company's historical income stream appropriately weighted, with consideration to the future income stream.

* * * *

(4)   Such other information as evidence to value as may be obtained that will enable the division to determine the fair market value of the property of the companies. . . .

In *Tuthill* v. *Arkansas County Equalization Bd.,* 303 Ark. 387, 797 S.W.2d 439 (1990), we noted that, because of the separation of powers doctrine, it is not within the province of state courts to assess property. We can only review the assessments and reverse them and send them back to the executive department when they are clearly erroneous, manifestly excessive, or confiscatory. Furthermore, we will reverse property assessments only in the "most exceptional cases," and the burden of proof is on the protestant to show that the assessment is manifestly excessive or clearly erroneous or confiscatory. Finally,

in reviewing a finding of fact by a trial judge, we view the evidence, and all reasonable inferences therefrom, in the light most favorable to the appellee.

Section 26-26-1607 provides, in essence, that three valuation methods are available for the assessment of property valuation: 1) the book value method, 2) the stock and debt method, and 3) the income method. Not only did the Cooperative effectively concede, in this case, that the stock and debt method and the income method were inappropriate in valuing its assets, but one of its own witnesses testified that the book value method was "the method which [the Cooperative] believes is appropriate for a utility cooperative."

Consequently, we must decide whether the Tax Division's application of the book value method pursuant to section 26-26-1607(b)(1) was clearly erroneous.

Although section 26-26-1607(b)(1) provides that "[p]roper consideration *may* be made for functional or economic obsolescence (emphasis added)," the Cooperative asserts that its principal argument under this point of error "is that the Tax Division did not specifically consider obsolescence at all."

Economic obsolescence, as used with respect to valuation of property for taxation, is "a loss of value brought about by conditions that environ a structure such as a declining location or down-grading of a neighborhood resulting in reduced business volume." Black's Law Dictionary (5th ed. 1979).

Functional obsolescence is defined as the loss of value due to inherent deficiencies within the property (the need for replacement because a structure or equipment has become inefficient or out-moded because of improvements developed since its original construction or production.) Black's Law Dictionary (5th ed. 1979).

In determining whether the word "may" is merely permissive or is mandatory, not only the language of the act, but the circumstances surrounding its passage and the object in view, must be considered. *Washington County* v. *Davis*, 162 Ark. 335, 258 S.W. 324 (1924).

We note that prior to the passage of Act 9 of the Second

Extraordinary Session of 1980, subdivision (b)(1) provided that "proper allowance and deduction *shall* be made for functional or economic obsolescence. . . ." (Emphasis added.) The 1980 amendment thus changed the statute from mandatory (shall) to directory (may), and it is clear that the legislature intended to invest the Tax Division with the option and discretion of considering economic and functional obsolescence in valuing taxable property. *See generally Gregory* v. *Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963).

Given the Tax Division's discretion in considering functional or economic obsolescence in the determination of the fair market value of the Cooperative's property, the Tax Division nevertheless contends that it does consider obsolescence in valuating the Cooperative's property because an implicit component of the depreciation subtracted from the original cost is obsolescence.

The Tax Division introduced available sales data statistics indicating that electric generating facilities tended to sell at approximately "net book" value. This evidence showed that in 18 of 24 sales of electric utility facilities from 1974 through 1981, the price paid for the facility was between 100% and 108% of "net book" value. The Cooperative challenged these statistics on the basis that they were too old to reflect the current market value of electric utility facilities; yet, it failed to produce any evidence as to more recent sales or that electric utility facilities are currently selling for less than "net book" value.

■■ Additionally, the fact that the Tax Division has used the book value method and has not employed the income or stock and debt methods does not result in a denial of equal protection. "That two methods are used to assess property in the same class is, without more, of no constitutional moment." *Allegheny Pittsburgh Coal* v. *Webster County*, 488 U.S. 336 (1989). The General Assembly's designation of optional accepted accounting methodology authorized the Tax Division to pursue or apply one of the options. The Tax Division offered reasons supporting its choice, and the Cooperative conceded that the book value method was the appropriate valuation method; accordingly, the Cooperative has failed to show that section 26-26-1607 is invalid either on its face or as applied in this case.

■ Consequently, we cannot say that the Tax Division's

assessment of the Cooperative's property is clearly erroneous.

The Cooperative next asserts that the trial court erred in affirming the Tax Division's refusal to consider certain of its oil and gas fired plants as economically and functionally obsolete. The Tax Division valued these plants at $17.5 million in 1987; at that time, the plants were in extended cold standby status, meaning that the plants were taken "off-line" and the mechanical parts susceptible to corrosion or rust were placed into a gel compound.

Arkansas Code Ann. § 26-26-1602(a) (1987) addresses the reporting of property subject to assessment and provides in pertinent part as follows:

> (a)   For purposes of this subchapter, property is used or held for use in the operation of a company as such if it is owned or controlled by a utility or carrier and is being utilized, *is capable of utilization*, in the operation of a utility or carrier, or is being constructed for future utilization in the utility or carrier operation. . . .

(Emphasis added.)

Tellingly, the Cooperative states that these plants, in cold standby status, are "significantly reduced in value at this time," but that it is currently considering restoring one of the three plants. Apparently, two major considerations resulting in taking these three plants off-line were the regional surplus production capacity and less-than-anticipated demand for electricity.

The Commission determined that the three plants were assessable property pursuant to section 26-26-1602(a) and stated:

> While these plants are admittedly not being used at the present time, it is obvious that they are capable of being used. . . . [the Cooperative] obviously has contemplated that some time in the future, the plants may again be needed and placed back in operation. The fact that some restoration or modification of the plants may be necessary to take the plants out of "cold-standby" status and to place the plants back in operation does not support a conclusion that the plants are not capable of utilization.

We also find it significant that these three plants are currently included in the Cooperative's rate base at their "net book" value and, as a consequence, that the Cooperative is presently recovering in authorized rates all of the expenses associated with the plants prior to their being placed in cold standby status, as well as the *ad valorem* taxes associated with the three plants.

These plants remain capable of generating electricity subject to the management decisions of the Cooperative; indeed, the Cooperative continues to voluntarily maintain these plants as assets.

In sum, these three plants are capable of utilization and are earning a return based on their pre-cold standby status. We, again, cannot say that the Tax Division's assessment was clearly erroneous.

Affirmed.