# SUMMERS CHEVROLET, INC. *v.* YELL COUNTY, Arkansas

92-38                                              832 S.W.2d 486

Supreme Court of Arkansas
Opinion delivered June 22, 1992
[Rehearing denied July 20, 1992.*]

---

*Corbin, J., would grant rehearing.

*Michael U. Sutterfield*, for appellant.

*Winston Bryant*, Att'y Gen., *Frank J. Wills III,* Asst. Att'y

Gen., for appellee.

JACK HOLT, JR., Chief Justice. This appeal concerns whether the appellant, Summers Chevrolet Inc. (Summers), was denied fair treatment under the Arkansas Constitution, and equal protection under the Fourteenth Amendment of the United States Constitution, in the 1990 tax assessment of its motor vehicle inventory.

Summers is an automobile dealership in Yell County selling new and used motor vehicles. In 1990, Summers voluntarily assessed its inventory, as was the practice in that county, at a value of $140,000. Roy Summers, President of Summers Chevrolet, Inc., testified at trial that the value was based on approximately 25% of the actual value of the inventory and that this percentage had always been accepted without question in the years prior to 1990. The county assessor deemed this value too low, however, and conducted an on-site investigation. The assessor estimated the inventory at its full, fair market value, resulting in an assessment of $1,327,000. Since personal property is then taxed at 20% of its assessed value, the reassessment resulted in an increase in the amount of Summers' taxable business property from $28,000 to $265,400.

Summers appealed the assessment to the Yell County Equalization Board, where it was slightly decreased. The Yell County Court affirmed the Board's findings. Summers then appealed to the Yell County Circuit Court by way of a petition for administrative review and notice of appeal. The argument presented there was that the assessment of Summers' property at 100% of its market value exceeded the percentage at which other car dealerships and similarly situated businesses were being assessed in other counties. It was stipulated that the assessment was conducted in compliance with the guidelines promulgated by the Arkansas Assessment Coordination Division, and the computed full fair market value was not challenged. Summers argued, however, that the disparity in assessments between counties violated Ark. Const. Art. 16 § 5, which requires uniformity and equality of tax assessments, and its rights under the Equal Protection Clause of the Fourteenth Amendment. Summers requested the assessment be reduced to the statewide average of similarly situated property.

Following a trial and the submission of briefs, the circuit court found that although there was disparity in assessment of car dealers between the 75 counties, "ranging from 30% to 65% of full value, and until now none have been assessed at 100%," the Yell County assessor had complied with the law in assessing Summers' inventory and Summers had not been denied equal protection of the law "any more than those who had been assessed at 65%, as opposed to 30%." The trial court noted that "all of this points up the problem of assessing car dealers."

█ Summers now appeals, arguing 1) the circuit court erred in concluding there was no violation of his federal equal protection rights, despite a specific finding that a disparity in assessments existed across the state, and 2) the circuit court erred in finding no violation under the Arkansas Constitution. We find the evidence simply does not support a violation of Summers' rights under either constitutional provision. We will affirm the trial court if it reached the right result, even though it may have announced the wrong reason. *Smackover State Bank* v. *Oswalt*, 307 Ark. 432, 821 S.W.2d 757 (1991).

## I. EQUAL PROTECTION

█ The United States Supreme Court has held in order to invoke one's rights under the Equal Protection Clause of the Fourteenth Amendment, it must be shown there was an intentional systematic undervaluation by state officials of other taxable property in the same class. *Allegheny Pittsburgh Coal Co.* v. *County Comm'n of Webster County, West Virginia*, 488 U.S. 336 (1989); *Sunday Lake Iron Co.* v. *Wakefield*, 247 U.S. 350 (1918). It is clear that mere errors of judgment by officials will not support a claim of discrimination; there must be something more — something which in effect amounts to an intentional violation of the essential principle of practical uniformity. Furthermore, the good faith of state officers and the validity of their actions are presumed and, when assailed, the burden of proof is on the complainant. *Sunday Lake Iron Co., supra; see also White River Lumber Co.* v. *State*, 175 Ark. 956, 2 S.W.2d 25 (1928).

We must first note that although the trial court stated in its order that the parties "stipulated that car dealers are assessed at a value in all 75 counties ranging from 30% to 65% of full value, and until now none have been assessed at full value," we find

nothing in the record evidencing such a stipulation. The trial court may have gleaned these facts from the evidence introduced by Summers, but nowhere is there any agreement as to these facts. The parties agreed only as to the validity of the assessment procedures and the calculation of the full fair market value of Summers' inventory.

Other than the assessor from Yell County, only seven of the 75 assessors from the various counties in Arkansas testified. Two of the assessors did state that they routinely accepted voluntary assessments averaging much lower than 100% of the fair market value. One estimated the assessment percentage at approximately 30% and the other at between 30% and 40%. The other five assessors, however, could not give specific percentages and stated they were striving for 100%. All but one assessor testified they did not have the staff necessary to conduct countywide appraisals and were largely forced to rely on voluntary assessments in which the taxpayers render their own assessments and swear, under oath, that they are assessing at 100%. *See* Ark. Code Ann. §§ 26-26-901 through 903 (1987 and Supp. 1991).

Bob Corbin, the assessor from Yell County, testified that he began a reappraisal of all business personal property in 1989 when he discovered the assessment ratio had fallen below the required 20%. He stated he personally reviewed the assessments of all 350 businesses in Yell County and that he had treated Summers no differently from any other business.

James Metzger, an expert witness testifying on Summers' behalf, stated that studies conducted in 1987 and 1988 indicated the assessments of automobile dealers across the state were lower than any other category of personal property. He stated the method of assessment used then was predominantly voluntary assessment and that although the Assessment Coordination Division has since instituted changes in order to improve the quality of assessments, the primary method of assessment remains the same. Mr. Metzger conceded, however, that no statistically valid studies had been done since 1988. He also testified that automobile dealers were very difficult to assess due to the nature and turnover of the inventory, in addition to the problems with lack of staffing among the county assessors.

The supervisor of the 1987 and 1988 studies was Steve

Sutterfield, with the Arkansas Assessment Coordination Division. Mr. Sutterfield testified that the assessments ratios were indeed low for those years but that since that time his department had made extreme efforts to educate assessors as to methodology of valuation and their responsibility under the law, and to provide more specific guidelines. Since 1990, the department has required the use of a statewide, standardized commercial property assessment form. Mr. Sutterfield stated that as a result of these efforts, two billion dollars were added to the personal property revenues of the state between 1990 and 1991, three times the normal amount of growth in any given year over the last ten years. He could not render an opinion as to the statewide uniformity in assessment of car dealers for 1990, since the last study was conducted in 1988. Mr. Sutterfield testified he felt Summers' assessment was proper in comparison to other classes of personal property within Yell County.

■ We recognize the longstanding problem with county assessment problems, *see Arkansas Pub. Serv. Comm'n v. Pulaski County Bd. of Equalization*, 266 Ark. 64, 582 S.W.2d 942 (1979), and all of this evidence, as the trial court noted, "points up the problem of assessing car dealers." It does not, however, evidence an intentional, systematic practice of undervaluation, either in Yell County or in other counties across the state. Only two assessors testified that their average assessments were below full, fair market value. The other assessors were at least attempting to assess at 100% and to equalize the business personal property assessments in their counties. Neither expert witness could adequately evaluate the status of uniformity in automobile dealer assessments following the last study in 1988.

We simply cannot say, based on the evidence presented, that there was an intentional, systematic practice of lowering assessment values and that, as a result of this practice, Summers was denied equal protection under the Fourteenth Amendment.

## II. ARKANSAS CONSTITUTION

■ Summers also challenges its assessment under Art. 16 § 5 of the state constitution, which provides in relevant part:

(a) All real and tangible personal property subject to taxation shall be taxed according to its value, that value to

be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property for which a tax may be collected shall be taxed higher than another species of property of equal value. . . .

Contrary to the State's argument that this mandate applies only within county lines, the above provision clearly refers to statewide equality and uniformity, and we have held that a taxpayer has the right to compel a reduction in his assessment as would afford equality and uniformity with assessments of other like property in other counties of the state. *State ex rel.* v. *Meek*, 127 Ark. 349, 192 S.W. 202 (1917).

We will reverse property assessments "only in the most exceptional cases," however, and the burden of proof is on the protestant to show that the assessment is manifestly excessive or clearly erroneous or confiscatory. *Arkansas Elec. Coop. Corp.* v. *Ark. Pub. Serv. Comm'n*, 307 Ark. 171, 818 S.W.2d 935 (1991). Also, in reviewing a finding of fact by a trial judge, we view the evidence and all reasonable inferences therefrom, in the light most favorable to the appellee. *Id.*

A review of the evidence in the light most favorable to Yell County, again leads us to the conclusion that the evidence does not support proof of an overall system of inequality in assessments. Summers points to James Metzer's opinion that for 1990, car dealers were still assessing, statewide, at an average of only 50% of fair market value. As stated earlier, however, Mr. Metzger conceded that no valid studies had been conducted since 1988. Steve Sutterfield confirmed this fact and admitted he was unable to speculate as to the overall quality of assessment in 1990. Again, only two of the assessors who testified conclusively stated they were assessing well below 100%.

Clearly, the assessor from Yell County was acting under the mandates of the Arkansas Coordination Division and he testified that for the year in question he had treated all businesses equally in his assessments of their personal property. We note that it is the Arkansas Public Service Commission that is given the full power and authority over "the valuation, assessment, and equalization of all property. . . ." and over "the several county assessors. . .to the end that all assess-

ments. . .shall be made in relative proportion to the just and true value thereof, in substantial compliance with the law." Ark. Code Ann. § 26-24-102 (1987); *see also Tuthill* v. *Arkansas County Equalization Board*, 303 Ark. 387, 797, S.W.2d 439 (1990). Although the question of whether the state, and not Yell County, should properly have been named the defendant in this case was not raised here, we think it important to note its overall duties of ensuring statewide uniformity.

Notwithstanding this commentary, we hold the evidence does not support a finding of state or countywide inequality and there was, therefore, also no violation under Art. 16 § 5.

Affirmed.

GLAZE, J., concurs.

CORBIN, J., dissents.

TOM GLAZE, Justice, concurring. Although the appellant's proof failed to show an intentional, systematic practice of undervaluation of personal property, this case does reflect there are counties where assessment at fair market value is not being achieved. The state has the obligation to assure assessments on property, privileges and franchises are properly made.

The Assessment Coordination Division of the Public Service Commission is given the power of supervision and control over the several county assessors and boards of equalization and review in order that assessments of property shall amount to true market value. *Tuthill* v. *Arkansas County Equalization Bd.*, 303 Ark. 387, 797 S.W.2d 439 (1990); Ark. Code Ann. § 26-24-101 and -102 (1987). It is the duty of the assessors, boards of review or equalization and county judges to adopt the basis of valuation certified by the Commission. Ark. Code Ann. § 26-24-105 (1987). The Commission has the authority to direct and approve suits to be instituted by the Attorney General, prosecuting attorneys, or attorneys specially employed for such purpose for the collection of any taxes or penalties due the state. Ark. Code Ann. § 26-24-109 (Repl. 1991).

Apparently, Yell County followed the directive of the Arkansas Assessment Coordination Division and assessed property in the county at the property's full value. However, if Yell

County proves the exception in this regard rather than the rule, state and county officials failing to meet their duties in administrating and enforcing legal evaluation or assessment requirements may be placing themselves at risk to potential litigation designed to ensure all state taxpayers are treated evenhandedly. *See generally* Annotation, *Tax Assessment — Standing to Challenge*, 9 A.L.R.4th 428, 436 (1981). Hopefully, a concerted effort by state officials can serve to avoid such litigation. The result reached by this court in this case merely highlights a serious flaw in the state's and counties' apparent underassessment of property; it in no way resolves the problem.

DONALD L. CORBIN, Justice, dissenting. I would reverse under our Arkansas Constitution art. 16, § 5. We have two cases, *White River Lumber Co.* v. *State*, 175 Ark. 956, 2 S.W.2d 25 (1928) and *State ex rel.* v. *Meek*, 127 Ark. 349, 192 S.W. 202 (1917), that contain strong language regarding the "uniformity" requirement of state assessments. This court has stated that the "paramount command of the [state] Constitution [is] that the valuation must be equal and uniform throughout the State." *Meek, supra*, at 354, 192 S.W. at 204. Consequently, this court has refused to compel county assessors to raise taxes, even to conform to state guidelines, when the county's tax valuation would then be greater than the other counties in the state. *Id.* "It is true the Constitution provides that all property subject to taxation shall be taxed according to its value, but this is done when the valuation is equalized with other property of the same kind in the county." *Id.* at 353, 192 S.W. at 204. The court's reasoning was summarized in the *Meek* opinion as follows:

> We are of the opinion that the answer of the defendants is a sufficient one and that *they are compelled by the plain mandate of the Constitution to assess property in the county in conformity with valuations placed on such property* in other counties, regardless of the fact that it calls for an assessment at less than full value. *Any other view of the matter would work an injustice to the taxpayers of that particular county* and that, too, in manifest violation of the constitutional guaranty. [Emphasis added.]

*Id.* at 357, 192 S.W. at 205.

The corollary to the holding in *Meek* is that an individual taxpayer, whose property valuation is based on a higher percentage of his property value, is entitled to a reduction of his assessment so as to conform to the valuations placed upon other similar property. In fact, this court has held as much in *Drew County Timber Co.* v. *Board of Equalization*, 124 Ark. 569, 187 S.W. 942 (1916) and *Ex Parte Fort Smith & Van Buren Bridge Co.*, 62 Ark. 461, 36 S.W. 1060 (1896).

In this case, I believe that appellant presented sufficient proof to establish that his assessment was out of line with the assessments of other car dealers throughout the state. James Metzer, author of *Sales Tax and Automobile Sales in Arkansas*, testified that county tax assessors continue to rely predominately on voluntary renditions to evaluate business inventory. While the Assessment Coordination Division has implemented new valuation methods in the last several years, Metzer testified that the current average valuation of business inventory was approximately fifty percent of the inventory's market value.

Appellant also presented the testimonies of the tax assessors from Pulaski, Johnson, Logan, Faulkner, Conway, Pope, and Washington counties. These counties represent a cross-section of the state, and the testimonies of these assessors support appellant's argument that he was assessed unfairly. The county assessors testified that they continued to rely on voluntary renditions for assessing the market value of inventory, and several assessors testified that they did not believe that these voluntary renditions reflected 100% of the inventories' fair market values.

American Heritage Dictionary defines "uniform" as "always the same; unvarying — without fluctuation or variation; consistent; being the same as another or other. "Equal" is defined as "being the same or identical to in value."

The majority contends that appellant did not make its case. I disagree. The trial judge was convinced that Summers made a case for a lack of uniform tax assessments in other counties in the state but found that the assessment was equal and uniform for the taxpayers of Yell County. I do not fault the assessor of Yell County. He should be lauded for doing a very difficult and thankless task. I would reverse and remand this case.