IBM CREDIT CORPORATION *v.*
PULASKI COUNTY, Arkansas

93-1194                                    873 S.W.2d 161

Supreme Court of Arkansas
Opinion delivered April 11, 1994

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *James M. McHaney, Jr.*, for appellant.

*Nelwyn Davis*, for appellee.

ROBERT L. BROWN, Justice. This is an assessment case which concerns the value that the Pulaski County Assessor, B.A. McIntosh, placed on used IBM mainline computers leased to Baptist Medical Center and Dillard Department Stores. The appellant, IBM Credit Corporation, advances the argument that certain trade publications like *Computer Price Watch, Computer Price Guide*, and the *End-User Market Value Report* published by Daley Marketing Corporation are more valid for determining the value of used IBM equipment since they depict the actual market for that equipment. The circuit court agreed with the valuation method used by the assessor's office which was the cost of the computers less straight line depreciation over six years. IBM Credit raises two points on appeal: (1) whether the circuit court erred in ignoring fair market value data as set out in those trade magazines; and (2) whether straight line depreciation for a term of years is a reasonable means of determining fair market value. We find no error in the circuit court's decision, and we affirm.

IBM Credit is in the business of leasing IBM mainline computers. The customer and IBM Corporation, which manufactures the computers, negotiate a price for the equipment. Once the price is established, the customer then assigns the right to purchase the computer equipment to IBM Credit. IBM Credit pur-

chases the computer equipment from IBM Corporation and leases it back to the customer.

In 1992, IBM Credit provided the Pulaski County Assessor with documentation which it claimed established the fair market value of the three leased units based on actual market conditions as of January 1992. This documentation included: (1) IBM Credit's experience as the largest dealer of used IBM computer equipment in the United States; and (2) data contained in published trade journals such as *Computer Price Watch* which list both wholesale and retail prices for used, intermediate-to-large IBM computer systems.

The assessor did not use IBM Credit's "fair market" figures to determine the value of the three used computers. Instead, he chose to use a cost-less-depreciation schedule over a six year period. This valuation method, according to the assessor, had been used to value all computers in Pulaski County since the early 1980's. He valued IBM Credit's two computer systems leased to Dillard's and one computer system leased to Baptist Medical Center at $7.61 million using straight line depreciation and a useful life of six years. IBM Credit's total value for these same three computer systems using its prices garnered from trade publications was $5.85 million.

IBM Credit challenged the assessor's valuation methodology before the Board of Equalization, which affirmed the assessor's figures. It then appealed to the Pulaski County Court which also affirmed the assessor's decision. IBM Credit next appealed to Pulaski County Circuit Court and styled the case with Pulaski County, Arkansas as the sole appellee. Following a hearing, the circuit court issued a letter opinion, stating: "Although IBM's proposed valuation might be accurate, if adopted, every computer in each 'mom and pop' business would have to be valued in the same manner. There is not a 'Computer Watch,' which mainly covers IBM products, for many of the manufacturers." The court concluded that the assessor's valuation figures were reasonable for the three IBM units in question and that the most practical method for arriving at the value of used equipment was the uniform method of cost less depreciation. An order affirming the decision of the county court was subsequently entered.

IBM Credit first claims that the circuit court erred in not requiring the assessor to consider its fair market data pursuant to Ark. Code Ann. § 26-26-1202(c)(Repl. 1992). § 26-26-1202(c) reads:

> (c)(1) Personal property of any description shall be valued at the usual selling price of similar property at the time of listing.
>
> (2) If any personal property shall have no well-fixed or determined value in that locality at that time, then it shall be appraised at such price as in the opinion of the assessor could be obtained at that time and place.

Pulaski County, on the other hand, relies on Article 16, § 5 of the Arkansas Constitution, which provides in part:

> (a) All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property for which a tax may be collected shall be taxed higher than another species of property of equal value. . . .

■ The standard of review of a tax assessment is whether the assessment is "manifestly excessive or clearly erroneous or confiscatory." *Summers Chevrolet, Inc.* v. *Yell County*, 310 Ark. 1, 832 S.W.2d 486 (1992); *Jim Paws, Inc.* v. *Equalization Bd. of Garland County*, 289 Ark. 113, 710 S.W.2d 197 (1986), citing *St. Louis-San Francisco Ry. Co.* v. *Arkansas Pub. Serv. Comm'n*, 227 Ark. 1066, 304 S.W.2d 297 (1957). The burden of proof is on the protestant assessed. *Summers Chevrolet, Inc.* v. *Yell County, supra; Arkansas Elec. Coop. Corp.* v. *Arkansas Pub. Serv. Comm'n*, 307 Ark. 171, 818 S.W.2d 935 (1991).

■ It is only in the most exceptional cases that an appellate court will grant a reassessment. *Jim Paws, Inc.* v. *Equalization Bd. of Garland County, supra.* As we stated in *St. Louis-San Francisco Ry. Co.* v. *Arkansas Pub. Serv. Comm'n, supra,* "Ordinarily the Court has no jurisdiction to make a tax assessment, and if it finds error, it should remand the case to the assessing body for further proceedings in accordance with the Court's

findings." 227 Ark. at 1069, 304 S.W.2d at 299, *citing* 84 C.J.S. 1123; *see also Potlatch Corp.* v. *Arkansas City School Dist.*, 311 Ark. 145, 842 S.W.2d 32 (1992); *Tuthill* v. *Arkansas County Equalization Board*, 303 Ark. 387, 797 S.W.2d 439 (1990). Because of the separation of powers doctrine, it is not within the province of state courts to assess property. *Tuthill* v. *Arkansas County Bd. of Equalization, supra.*

■ A review of the evidence reveals that the assessor's decision to value IBM Credit's computers by the cost-less-depreciation method was not clearly erroneous or arbitrary or confiscatory. The publications offered by IBM Credit to establish the true market value of its computers did not list all computers that need to be assessed. The publications, therefore, lacked uniformity and in that respect differed from the "blue book" for automobiles. While arguably the publications more accurately reflect the value of IBM Credit's computers, they do not reflect the value of *all* computers. To use *Consumer Price Watch* data to value IBM Credit's computers would result in IBM Credit's being treated differently than other owners of similar property, which is diametrically opposed to the dictates of Article 16, § 5. *See Doniphan Lumber Co.* v. *Cleburne County*, 138 Ark. 449, 212 S.W. 308 (1919).

Furthermore, IBM Credit's proposed method of determining the value of computers in Pulaski County would be unduly burdensome. The evidence in the *de novo* hearing before the circuit court was that there are literally thousands of computers that must be assessed in Pulaski County. Not all of these computers have trade publications which list their used value; indeed, many do not.

In sum, to use a discrete methodology for valuing IBM computers and then cost less depreciation for many other brands sacrifices the very uniformity that the state constitution demands. Clearly, every other computer wholesaler and retailer assessed would have a meritorious argument of discrimination were the assessor to carve out one brand of computer for disparate treatment as compared to others.

IBM Credit next asserts that even if the assessor was free to disregard the market value data, his adoption of the straight

line depreciation schedule was arbitrary, capricious, and confiscatory. This is so, according to IBM Credit, because the schedule fails to account for computer equipment's functional obsolescence, as opposed to wear and tear, and assumes that all computers depreciate equally over a six year period and then cease to depreciate, which ignores market reality.

We conclude that the assessor's straight line depreciation schedule over six years is a reasonable means for determining fair market value. This court has approved the use of cost-less-depreciation schedules for assessing other forms of personal property. *See, e.g., Potlatch Corp.* v. *Arkansas City School Dist., supra.* In *Potlatch*, we noted that the Assessment Coordination Division of the Arkansas Public Service Commission, which has the power of supervision and control over county assessors and boards of equalization, had published a manual to be used by county assessors which recommended three methods to arrive at market value: (1) comparable sales; (2) capitalization of income; and (3) cost less depreciation. *See also Tuthill* v. *Arkansas County Equalization Board, supra.*

The county assessor, B.A. McIntosh, testified that he attempted to factor in functional obsolescence in computers in the early 1980's by assessing them based on a useful life of six years versus a longer term for other forms of tangible personal property. Moreover, IBM Credit's witness, Mike Costogan, a financial marketing advisor with the company, admitted that if he needed to value a computer not listed, he would use some alternative methodology that rapidly depreciates the value of the asset such as straight line depreciation. We are not prepared to say that straight line depreciation is an arbitrary, capricious, or confiscatory means of determining value for the computers in question. The circuit court did not err in finding that the assessed values were reasonable.

Though the issue was not raised, we observe that IBM Credit failed to join as appellee any party that could have implemented a reassessment of the computer systems in question had we decided that a remand was appropriate. That failure to join the assessor or board of equalization as a party leaves a void as to who would effect the reassessment on remand.

Affirmed.

CORBIN, J., not participating.