The Honorable Doyle Webb State Senator P.O. Box 1998 Benton, Arkansas 72018
Dear Senator Webb:
This opinion is being issued in response to your recent questions regarding Acts 1005, 1006, 1007, and 1008 of 1995.
Act 1005 provides for a six and one-half percent increase in the wholesale excise tax on motor fuel.
Act 1006 refers to the voters a five-cent per gallon increase in the excise tax levied on distillate special fuels (the "diesel tax").
Act 1008 provides for a one-half percent increase in the sales and use tax.
Act 1007 authorizes the State Highway Commission to issue general obligation bonds, not to exceed $3.5 billion, for the purpose of funding certain highway system improvements, and refers the approval of the issuance of such bonds to the voters. The Act further provides for the use of portions of the taxes created by Acts 1005, 1006, and 1008 to fund the bonds issued pursuant to Act 1007.
With regard to these acts, you have asked several questions, which have been restated as follows, so as to set forth more fully the issues presented:
 (1)(a) If voters disapprove the five cent per gallon increase in the excise tax levied on distillate special fuels, yet approve the issuance of the general obligation bonds, can the State proceed to issue bonds pursuant to Act 1007?
 (1)(b) If so, and if the State does proceed to issue the bonds, will the tax increases enacted by Acts 1005 and 1008 become effective?
 (2) If voters disapprove the five cent per gallon increase in the excise tax levied on distillate special fuels, yet approve the issuance of the general obligation bonds, must the State proceed to issue the bonds pursuant to Act 1007?
 (3) If the voters disapprove the five cent per gallon increase in the excise tax levied on distillate special fuels, yet approve the issuance of the general obligation bonds, will the tax increases enacted by Acts 1005 and 1008 become effective?
 (4)(a) If either the issuance of the general obligation bonds or the tax increase on distillate special fuels is not approved by voters on January 9, 1996, may the Governor, pursuant to the existing legislation, submit either or both issues to another statewide election or elections?
 (4)(b) If so, are there any legal restrictions as to the date for calling or holding such a rerun election or elections?
RESPONSE
Question 1(a) — If voters disapprove the five cent per gallon increase inthe excise tax levied on distillate special fuels, yet approve theissuance of the general obligation bonds, can the State proceed to issuebonds pursuant to Act 1007?
It is my opinion that if the voters disapprove the five cent per gallon increase in the excise tax levied on distillate special fuels, yet approve the issuance of the general obligation bonds, the State can proceed to issue bonds pursuant to Act 1007.
I base this conclusion on the language of Act 1007 itself, as well as on the language of Act 1006, which creates the distillate special fuel tax increase.
The Language of Act 1007
One of the primary rules of statutory interpretation in Arkansas is that in determining the meaning of a statute, it is appropriate to look first to the language of the statute itself, and in the absence of an ambiguity, to construe that language just as it reads. U.S. v. Anderson,626 F.2d 1358 (8th Cir. 1980); State ex rel. Bryant v. McCleod,318 Ark. 781, 888 S.W.2d 639 (1994).
The language of Act 1007 of 1995 does not condition the issuance of the bonds upon approval of the distillate special fuel tax increase. Rather, the language of the Act specifies that in the final analysis, the bonds will be a general obligation of the State, and will be secured and payable from the general revenues of the State, without regard to the possible unavailability of other sources of repayment. Although Act 1007 creates the "Arkansas Highway Construction and Improvement Bond Account" from which repayment is to be made first, and designates certain sources of funding to be placed in that account (including portions of the tax increases provided by Acts 1005, 1006, and 1008), it explicitly allows for payment from the State's general revenues if the Account is insufficient. Several sections of Act 1007 indicate as much.
First, Section 5 of Act 1007 directs the Governor to explain in his notice or proclamation of election on the question of the issuance of the bonds, substantially as follows: "The Bonds shall be general obligations of the State of Arkansas, secured by and payable from the generalrevenues of the State." (Emphasis added.)
Similarly, Section 11 of Act 1007 states:
 All bonds issued under this Act shall be direct general obligations of the State of Arkansas, for the payment of the debt service on which the full faith and credit of the State of Arkansas are hereby irrevocably pledged so long as the bonds are outstanding. The bonds shall be payable from the 1995 Arkansas Highway Construction and Improvement Bond Account[1] and general revenues of the state . . ., and such amount of general revenues as is necessary is pledged to the payment of debt service on the bonds, and shall be and remain pledged for those purposes.
Acts 1995, No. 1007, Section 11.
Section 12 of the Act states:
 (a) Without in any way limiting the general obligation of the State of Arkansas to repay the bonds, the designated tax revenues (as such term is defined in Section 2 hereof) are hereby specifically pledged to the payment of the debt service on the bonds.
* * *
 (e) In the event that there are insufficient amounts in the 1995 Arkansas Highway Construction and Improvement Bond Account in the State Highway and Transportation Department Fund to pay the debt service on bonds issued and outstanding under this Act, or to fund any necessary reserves at the required level, the State Treasurer shall, to the extent permitted by law, transfer additional amounts thereto from the general revenues of the State.
Acts 1995, No. 1007, Section 12(a) and (e) (emphasis added).
The above-quoted language clearly indicates that the designation of certain special sources of funds for the repayment of the bonds does not limit the obligation of the State to repay the bonds from its general revenues.
Moreover, although the definition of the term "designated tax revenues" includes the distillate special fuel tax increase among the designated sources, that tax increase is the only such source that is contingent. That is, the distillate special fuel tax increase is to be used as a source of repayment of the bonds only if it is approved by the voters. The other sources are listed without contingencies. The Act therefore appears to contemplate the distillate special fuel tax increase as only one possible source of the funding for repayment of the bonds. It further appears to contemplate that other sources of repayment will be available, even if the distillate special fuel tax increase is not.
The Language of Act 1006
In addition to these sections of Act 1007, the language of Act 1006, which creates the distillate special fuel tax increase, explicitly supports the conclusion that approval of that tax is not a prerequisite to the effectiveness of the bond issue under Act 1007. Act 1006 states: "If the tax [the distillate special fuel tax] is not approved, the bonds, if approved, may be issued and secured by other taxes or portions of other taxes." Acts 1995, No. 1006, Section 6(b).
These aspects of the language of Acts 1007 and 1006 indicate that the issuance of the bonds can go forward if approved by the voters, even if the five cent per gallon increase in the excise tax levied on distillate special fuels is disapproved by the voters.
Question 1(b) — If so, and if the State does proceed to issue the bonds,will the tax increases enacted by Acts 1005 and 1008 become effective?
It is my opinion that if the bond issue is approved by the voters, and
the bonds are issued, the tax increases enacted by Acts 1005 and 1008 will become effective. Indeed, it is my opinion that the tax increases enacted by Acts 1005 and 1008 will become effective only if the bonds are actually issued.[2] Furthermore, it is my opinion that the effectiveness of the tax increases enacted by Acts 1005 and 1008 will not be impacted by the approval or disapproval of the distillate special fuel tax increase.
These conclusions are based upon the explicit language of Act 1007. The Act lists the sources from which the bonds will be repaid as including the five cent per gallon increase in the excise tax on distillate special fuels (if approved by the voters), the one-half of one percent increase in sales and use tax, and the six and one-half percent increase in the excise tax on motor fuel. The Act then states:
 The wholesale excise tax on motor fuel, the sales tax and the use tax have already been levied, but such taxes will not be collected unless the bonds are hereby approved by the voters. If the bonds are hereby approved, the wholesale excise tax on motor fuel, the sales tax and the use tax will be collected so long as the bonds are outstanding. If the bonds are not hereby approved, such taxes will not be collected. The excise tax of five cents per gallon on distillate special fuels is being submitted to the voters for their approval elsewhere on this ballot.
Acts 1995, No. 1007, Section 5 (emphasis added).
It is notable that immediately after stating that the sales tax (Act 1008) and the motor fuel tax (Act 1005) "will be collected" (emphasis added), the Act explicitly points out that the availability of the distillate fuel tax (Act 1006) is as yet undecided. This combination of statements indicates unequivocally that the effectiveness of the sales and motor fuel taxes created by Acts 1005 and 1008 are not contingent upon the voters' approval of the distillate special fuel tax (Act 1006).
The language quoted above from Act 1007 is unambiguous. If the voters approve the bond issue authorized by Act 1007 (and if the bonds are issued), the tax increases provided for in Acts 1005 and 1008 will become effective, without regard to the approval or disapproval of the distillate special fuel tax increase.
Question 2 — If voters disapprove the five cent per gallon increase inthe excise tax levied on distillate special fuels, yet approve theissuance of the general obligation bonds, must the State proceed to issuethe bonds pursuant to Act 1007?
It is my opinion that if the voters disapprove the five cent per gallon increase in the excise tax levied on distillate special fuels, yet approve the issuance of the general obligation bonds, the State can
proceed to issue the bonds, but will not be required to do so. Rather, a certain amount of discretion is placed in the hands of the Governor, the State Highway Commission, and the Chief Fiscal Officer in such a situation.
Although the language of Act 1007 is couched in mandatory terms,[3]
those terms make explicit reference to certain discretionary provisions. More specifically, Act 1007 states:
 If a majority of the qualified electors voting on the proposition vote in favor of the issuance of the bonds, then the [State Highway] Commission shall proceed with the issuance of bonds in the manner and on the terms set forth in this Act.
Acts 1995, No. 1007, Section 5(f) (emphasis added).
The "manner and terms" set forth in Act 1007 for the issuance of bonds require that the Governor, acting in conjunction with the Chief Fiscal Officer and the State Highway Commission, make certain determinations before proceeding to issue the bonds.
For example, before the Governor may authorize the Commission to issue the bonds, he must consult with the Chief Fiscal Officer regarding the amount of designated tax revenues that will be estimated to be collected. Upon reviewing the Commission's report of specific highway improvements to be financed with the proceeds of the bonds, the Governor must, in conjunction with the Commission, determine whether the estimated designated tax revenues, as reported by the Chief Fiscal Officer, will be sufficient to pay the debt service on the bonds. Only after determining that a sufficiency will be available can the Governor proceed to authorize the issuance of the bonds. See Acts 1995, No. 1007, Section 6.
Because Act 1007 places the responsibility for making these determinations within the discretion of the Governor, acting in consultation with the Chief Fiscal Officer and the State Highway Commission, I must conclude that the issuance of bonds under Act 1007 is not mandatory, even if approved by the voters.[4]
Question 3 — If the voters disapprove the five cent per gallon increasein the excise tax levied on distillate special fuels, yet approve theissuance of the general obligation bonds, will the tax increases enactedby Acts 1005 and 1008 become effective?
Because you have previously posed this question under a scenario in which the voters approve the bond issue and the State does proceed to issue the bonds (see Question 1(b)), I must assume that you are now questioning whether the tax increases enacted by Acts 1005 and 1008 will become effective in the event that the voters approve the bond issue but the State does not proceed to issue the bonds.
It is my opinion that the tax increases enacted by Acts 1005 and 1008 will become effective only if the State does proceed to issue the bonds.
I base this conclusion on language set forth in Section 5 of Act 1007. That section directs the Governor, in his proclamation of an election on the bond issue question, to describe the proposal. The key phrase in the law's suggested description states: "If the bonds are hereby approved, the wholesale excise tax on motor fuel, the sales tax and the use tax will be collected so long as the bonds are outstanding." Acts 1995, No. 1007, Section 5 (emphasis added).
The quoted language indicates that the motor fuel tax and the sales and use tax can be collected only if the bonds are "outstanding." Clearly, the bonds cannot be "outstanding" if they have not been issued. For this reason, I must conclude that the motor fuel tax increase authorized by Act 1005 and the sales and use tax increase authorized by Act 1008 will not go into effect unless the bonds are issued.
Question 4(a) — If either the issuance of the general obligation bonds orthe tax increase on distillate special fuels is not approved by voters onJanuary 9, 1996, may the Governor, pursuant to the existing legislation,submit either or both issues to another statewide election or elections?
It is my opinion that under the terms of Act 1007, if the voters do not approve the bond issue authorized by Act 1007, the Governor may call one subsequent election on the question of the bond issue. Such election, under the provisions of Act 1007, must be held no earlier than six months after the preceding election, but no later than December 31, 1996. See
Acts 1995, No. 1007, Section 5(f).
Act 1006, which refers the special distillate fuel tax to the voters, does not address the question of a subsequent election for approval or disapproval of the tax.
I have located no other legislation or other source of law that would authorize the Governor to call a subsequent election on either of these questions.
I must therefore conclude that the Governor may call one subsequent election on the bond issue question, but that he is not authorized to call a subsequent election on the special distillate fuel tax question.
Question 4(b) — If so, are there any legal restrictions as to the datefor calling or holding such a rerun election or elections?
See response to Question 4(a).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The Arkansas Highway Construction and Improvement Bond Account is made up of funds from the "designated tax revenues," as that term is defined in Section 2 of Act 1007. The "designated tax revenues" include portions of the tax increases provided by Acts 1005, 1006, and 1008.
[2] For a discussion of the scenario in which the bonds are approved but not issued, see response to Question 3.
[3] A well established rule of statutory interpretation in Arkansas is that the legislature's use of the word "shall" imposes a requirement, whereas the use of the word "may" indicates a grant of discretion. See,e.g., Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n., 307 Ark. 171,818 S.W.2d 935 (1991); Blaylock v. Strecker, 291 Ark. 340, 724 S.W.2d 470
(1987); Gregory v. Colvin, 235 Ark. 1007, 363 S.W.2d 539 (1963); Loftisv. Edwards, 235 Ark. 30, 356 S.W.2d 742 (1962); Fort Smith Gas v.Kincannon, 202 Ark. 216, 150 S.W.2d 968 (1941); Bush v. Martineau,174 Ark. 214, 295 S.W. 9 (1927).
[4] It might be noted that the Governor has repeatedly emphasized his intended policy that the bonds will not be issued in the event that the distillate special fuel tax is not approved.