

Cite as 2017 Ark. 49

# SUPREME COURT OF ARKANSAS

**No.** CV–16–586

PROTECT FAYETTEVILLE, F/K/A
REPEAL 119; PAUL SAGAN; PETER
TONNESSON; AND PAUL PHANEUF

APPELLANTS

AND

THE STATE OF ARKANSAS

INTERVENOR

V.

THE CITY OF FAYETTEVILLE,
WASHINGTON COUNTY, ARKANSAS;
LIONELD JORDAN, IN HIS OFFICIAL
CAPACITY AS MAYOR OF
FAYETTEVILLE; ADELLA GRAY;
SARAH MARSH, MARK KINION,
MATTHEW PETTY, JUSTIN TENANT,
MARTIN W. SCHOPPMEYER JR., JOHN
LATOUR, AND ALAN LONG, IN THEIR
OFFICIAL CAPACITIES AS ALDERMEN
OF THE FAYETTEVILLE CITY
COUNCIL

APPELLEES

**Opinion Delivered:** February 23, 2017

APPEAL FROM THE
WASHINGTON COUNTY
CIRCUIT COURT [NO. 72CV-15-
1510]

HONORABLE DOUG MARTIN,
JUDGE

<u>REVERSED AND REMANDED</u>.

**JOSEPHINE LINKER HART, Associate Justice**

Appellants, Protect Fayetteville, f/k/a Repeal 119; Paul Sagan; Peter Tonnesson; and

Paul Phaneuf, appeal from the circuit court's decision finding that the passage of Ordinance

5781 by the Fayetteville City Council, entitled "An Ordinance To Ensure Uniform

Nondiscrimination Protections Within The City of Fayetteville For Groups Already

Protected To Varying Degrees Throughout State Law," did not violate Act 137 of 2015,

the Intrastate Commerce Improvement Act, codified at Ark. Code Ann. § 14-1-401 to –403 (Supp. 2015). We reverse and remand.

On February 24, 2015, Act 137 was approved without an emergency clause. The effective date of all acts without an emergency clause or a specified effective date was July 22, 2015. Arkansas Code Annotated section 14-1-402 provides as follows:

> (a) The purpose of this subchapter is to improve intrastate commerce by ensuring that businesses, organizations, and employers doing business in the state are subject to uniform nondiscrimination laws and obligations, regardless of the counties, municipalities, or other political subdivisions in which the businesses, organizations, and employers are located or engage in business or commercial activity.
> (b) The General Assembly finds that uniformity of law benefits the businesses, organizations, and employers seeking to do business in the state and attracts new businesses, organizations, and employers to the state.

In sum, the General Assembly's stated purpose for passage of the Act was to improve intrastate commerce by ensuring that various entities in the state are subject to uniform nondiscrimination laws. Arkansas Code Annotated section 14-1-403 provides as follows:

> (a) A county, municipality, or other political subdivision of the state shall not adopt or enforce an ordinance, resolution, rule, or policy that creates a protected classification or prohibits discrimination on a basis not contained in state law.
> (b) This section does not apply to a rule or policy that pertains only to the employees of a county, municipality, or other political subdivision.

On June 16, 2015, the Fayetteville City Council passed Ordinance 5781. The Ordinance notes that various laws, including the Civil Rights Act, the Arkansas Civil Rights Act of 1993, and the Arkansas Fair Housing Act, provide "Fayetteville citizens with protections against discrimination on the basis of race, ethnicity, national origin, age, sex, religion and disability." The Ordinance further notes that the Arkansas General Assembly "has determined that attributes such as 'gender identity' and 'sexual orientation' require protection," citing Ark. Code Ann. § 6-18-514(b)(1) (Repl. 2013), which is a statute

addressing antibullying policies in public schools. The Ordinance provides that the "protected classifications" in the antibullying statute "for persons on the basis of gender identity and sexual orientation should also be protected by the City of Fayetteville to prohibit those isolated but improper circumstances when some person or business might intentionally discriminate against our gay, lesbian, bisexual and transgender citizens."

As its stated purpose, Ordinance 5781 provides,

> Since Federal and State law already protect citizens from most discrimination, the Uniform Civil Rights Protection Article shall *extend* existing protections to lesbian, gay, bisexual, and transgender citizens and visitors as recognized elsewhere in state law.

(emphasis added). The Ordinance defines "gender identity" as "an individual's own, bona fide sense of being male or female, and the related external characteristics and behaviors that are socially defined as either masculine or feminine." It defines "sexual orientation" as "heterosexuality, homosexuality or bisexuality by practice, identity or expression." In setting out a "discrimination offense," Ordinance 5781, in pertinent part, provides as follows:

> The right of an otherwise qualified person to be free from discrimination because of sexual orientation and gender identity is the same right of every citizen to be free from discrimination because of race, religion, national origin, gender and disability as recognized and protected by the Arkansas Civil Rights Act of 1993.

The Ordinance set a special election on September 8, 2015, for the voters to enact or reject the Ordinance. According to the Ordinance, on approval by the voters, the Ordinance would be enacted into the Fayetteville Code and become effective 60 days after the approving election.

On August 31, 2015, appellants began their litigation by filing a complaint and a motion for declaratory judgment. The circuit court denied appellants' motion for an emergency temporary restraining order that would have prohibited the special election. On September 8, 2015, the Ordinance was approved by the voters. The circuit court subsequently denied appellants' motion to stay the Ordinance from going into effect. The State of Arkansas intervened in the lawsuit.

Following a hearing, the circuit court entered an order granting in part and denying in part appellees' motion for summary judgment. The court further denied the cross-motions for summary judgment by appellants and the State. In the section of the order pertinent to this appeal, the circuit court found that Ordinance 5781 did not violate Act 137. In its analysis, the court noted that Act 137 prohibited the adoption or enforcement of an ordinance that created a protected classification on a basis not contained in state law. The court stated that Arkansas Code Annotated section 6-18-514, the statute on antibullying policies in public schools, contained "[p]rotected classifications" that included "gender identity and sexual orientation."

The antibullying statute, we note, defines an "attribute" as "an actual or perceived personal characteristic including without limitation race, color, religion, ancestry, national origin, socioeconomic status, academic status, disability, gender, gender identity, physical appearance, health condition, or sexual orientation." Ark. Code Ann. § 6-18-514(b)(1). The statute prohibits the "bullying" of a public school student or public school employee, and defines "bullying," in part, as "the intentional harassment, intimidation, humiliation, ridicule, defamation, or threat or incitement of violence by a student against another student

SLIP OPINION

or public school employee by a written, verbal, electronic, or physical act that may address an attribute of the other" student or public school employee. Ark. Code Ann. § 6-18-514(b)(2).

The circuit court also noted that the Arkansas Domestic Peace Act provided that shelters for victims of domestic abuse were required to "[d]evelop and implement a written nondiscrimination policy to provide services without regard to race, religion, color, age, marital status, national origin, ancestry, or sexual preference" Ark. Code Ann. § 9-4-106(1) (Repl. 2015). The circuit court further noted that a statute in the Vital Statistics Act provides that, on receipt of a certified copy of a court order "indicating that the sex of an individual born in this state has been changed by surgical procedure and that the individual's name has been changed, the certificate of birth of the individual shall be amended accordingly." Ark. Code Ann. § 20-18-307(d) (Repl. 2014).

The court noted that appellees argued that, in view of these three statutes, gender identity and sexual orientation were already protected classifications on bases contained in state law, and therefore, Ordinance 5781 did not create any protected classifications in violation of Act 137. The circuit court noted that, in response, appellants and the State argued that the only protected classifications to be considered are those set out in the Arkansas Civil Rights Act and that gender identity and sexual orientation are not protected classifications under that Act.

In its analysis, the court observed that the Arkansas Civil Rights Act is not mentioned in Act 137. The court concluded that Act 137 does not state that Arkansas's municipalities are prohibited from creating a protected classification on a basis not contained in the

Arkansas Civil Rights Act but instead are prohibited from creating a protected classification "on a basis not contained in state law." The court concluded that the classifications of gender identity and sexual orientation are classifications of persons protected on bases contained in state law, and therefore Ordinance 5781 does not create a protected classification on a basis not contained in state law in violation of Act 137.

The court further noted that the parties disagreed about the meaning of the word "basis" contained in Act 137. Appellants and the State asserted that, considering the Act's purpose, "basis" referred to the area of law in which a prohibition or discrimination is contained, such as discrimination in the area of employment law. Appellees, however, contended that the word means the reason why a person is discriminated against, such as his or her gender identity or sexual orientation. The court agreed with appellees and observed that the Act does not state that a municipality cannot adopt or enforce an ordinance that prohibits discrimination in the area of employment law.

The court concluded that, in compliance with Act 137, Ordinance 5871 prohibits discrimination on bases already contained in state law, and therefore, Ordinance 5871 does not violate Act 137. The court further concluded that because the Ordinance does not violate the Act, "the court need not address the constitutionality of Act 137." The court granted summary judgment to appellees and denied the appellants' and the State's cross-motions for summary judgment. The only claim on which appellants were granted summary judgment was appellees' claim that appellants did not have standing to bring the challenge. This appeal followed.

On appeal, appellants and the State challenge the circuit court's ruling that Ordinance 5781 does not violate Act 137. In its brief, the State argues that, to advance the Act's purpose of uniformity, the General Assembly precluded municipalities from adopting or enforcing an ordinance that creates a protected classification or prohibits discrimination on a basis not contained in state law. The State argues that the Act does not address specific persons or groups; rather, it requires that the decision to prohibit any, some, or all discrimination because of any particular personal characteristic be accomplished at the state level and be uniform throughout the state. The State asserts that the Act is an expression of the General Assembly's decision that determinations of protected classes and application of particular discrimination laws to such groups be decisions made at the state level and enforceable statewide in order to avoid a patchwork of different local rules and standards. The State contends that the Ordinance violates the Act by extending discrimination prohibitions to cover sexual orientation and gender identity. The State observes, "By essentially adding sexual orientation and gender identity to the list of protected classifications in the Arkansas Civil Rights Act, the Fayetteville Ordinance created two new protected classifications and thereby violated the Intrastate Commerce Improvement Act." Further, the State challenges the appellees' reliance on the antibullying statute, the Arkansas Domestic Peace Act, and the Vital Statistics Act. On appeal, the appellants adopt the State's arguments.

In response, appellees argue that Fayetteville voters enacted discrimination protections that are not new but instead have been in place in state law. Appellees assert that the Act limited its preemptive effect to an ordinance that attempted to create a protected classification unknown and unrecognized in state law. Appellees contend that because state

statutes have already created and referred to a protected classification for both sexual orientation and gender identity, the Ordinance did not create a protected classification. Appellees cite to the provisions discussed above in the antibullying statute, the Arkansas Domestic Peace Act, and the Vital Statistics Act. Further, appellees observe that Act 137 does not preclude creation of a protected classification or prohibiting discrimination on a basis not contained in the Arkansas Civil Rights Act, but instead says "on a basis not contained in state law."

The question presented to this court is the meaning of Act 137 and its application to Ordinance 5781. We review issues of statutory construction de novo. *Harris v. City of Fort Smith*, 366 Ark. 277, 280, 234 S.W.3d 875, 878 (2006). In considering the meaning and effect of a statute, this court construes it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 234 S.W.3d at 878. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.*, 234 S.W.3d at 878. When a statute is clear, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.*, 234 S.W.3d at 878.

In this case, the General Assembly expressly stated the intent. Act 137 sets out its purpose as "ensuring that businesses, organizations, and employers doing business in the state are subject to uniform nondiscrimination laws and obligations." Ark. Code Ann. § 14-1-402(a). Thus, the express purpose of Act 137 is to subject entities to "uniform nondiscrimination laws and obligations." The General Assembly noted the beneficial effect of the "uniformity of law." In keeping with the statute's goal of uniform nondiscrimination

laws and obligations, the General Assembly precluded municipalities from adopting or enforcing an ordinance that "creates a protected classification or prohibits discrimination on a basis not contained in state law." Ark. Code Ann. § 14-1-403(a).[1] "This court is very hesitant to interpret a legislative act in a manner contrary to its express language." *Cave City Nursing Home v. Ark. Dept. Human Servs.*, 351 Ark. 12, 21-22, 89 S.W.3d 884, 889. Thus, consideration must be given to whether, in applying Act 137 to Ordinance 5781, it can be said that the Ordinance violates the Act. Here, in defining a "discrimination offense," the Ordinance provides that the "right of an otherwise qualified person to be free from discrimination because of sexual orientation and gender identity is the same right of every citizen to be free from discrimination because of race, religion, national origin, gender and disability as recognized and protected by the Arkansas Civil Rights Act of 1993." The Ordinance specifically states that its purpose is to "extend" discrimination to include "sexual orientation and gender identity." In essence, Ordinance 5781 is a municipal decision to expand the provisions of the Arkansas Civil Rights Act to include persons of a particular sexual orientation and gender identity. This violates the plain wording of Act 137 by extending discrimination laws in the City of Fayetteville to include two classifications not previously included under state law. This necessarily creates a nonuniform nondiscrimination law and obligation in the City of Fayetteville that does not exist under state law. It is clear from the statutory language and the Ordinance's language that there is

---

[1]We note that the phrase "on a basis not contained in state law" modifies both the phrase "protected classification" and the phrase "prohibits discrimination." As one authority has stated, "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012).

a direct inconsistency between state and municipal law and that the Ordinance is an obstacle to the objectives and purposes set forth in the General Assembly's Act and therefore it cannot stand.

Moreover, the statutes cited by the circuit court, the antibullying statute, the Arkansas Domestic Peace Act, and the Vital Statistics Act, are unrelated to nondiscrimination laws and obligations and do not create protected classifications or prohibit discrimination on some basis. Rather, in their respective contexts, these statutes (1) provide a nonexclusive list of attributes on which a public school student or public school employee may not be bullied at school; (2) ask domestic-abuse shelters to develop their own nondiscrimination policies; (3) and permit the amendment of birth certificates. Accordingly, we hold that the circuit court erred in ruling that Ordinance 5781 did not violate Act 137.

We recognize that in this appeal the State further argues the constitutionality of Act 137. That issue, however, was not addressed by the circuit court. Issues unresolved by the circuit court are not preserved for appeal. *Priest v. Polk*, 322 Ark. 673, 686, 912 S.W.2d 902, 909 (1995).[2]

Reversed and remanded.

*Story Law Firm, PLLC*, by: *Travis W. Story*, *Katie L. Freeman*, and *Bob Ballinger*, for plaintiff-appellants.

*Leslie Rutledge*, Att'y Gen., by: *Lee Rudofsky*, Ark. Solicitor General, for intervenor-appellant.

*Kit Williams*, Fayetteville City Att'y, and *Blake Pennington*, Ass't City Att'y, for appellees.

---

[2] Appellees question whether the State may remain in the case as an intervenor, in view of the circuit court's decision not to rule on the constitutionality of Act 137, which was the State's asserted reason for intervention. Appellees, however, did not challenge in the circuit court the State's presence in the lawsuit below, nor did it file a notice of cross-appeal. Consequently, we decline to address this issue. *Landers v. Stone*, 2016 Ark. 272, at 5, 496 S.W.3d 370, 375.