

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-16-815

|  |  |
|---|---|
| | **Opinion Delivered** October 25, 2017 |
| FAYETTEVILLE EXPRESS PIPELINE, LLC | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| APPELLANT | [NO. 60CV-15-2357] |
| V. | |
| ARKANSAS PUBLIC SERVICE COMMISSION | HONORABLE WENDELL GRIFFEN, JUDGE |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

This case involves an assessment of 2014 ad valorem taxes on properties of Fayetteville Express Pipeline, LLC (FEP or appellant), by the Tax Division of the Arkansas Public Service Commission (Commission). FEP filed a formal petition asking the Commission for review. An administrative law judge (ALJ), sitting by designation of the Commission, conducted a public hearing and affirmed the Tax Division's assessment. The assessment was reaffirmed by the Commission. FEP subsequently appealed to the Pulaski County Circuit Court. The circuit court found that the Commission's decision to affirm the assessment of FEP's property was supported by substantial evidence in the record. On appeal, FEP argues six points. We affirm.

### I. *Background*

FEP owns a 185-mile natural gas pipeline that originates in Conway County, Arkansas, and terminates by connecting with another pipeline in Mississippi. FEP entered into long-term contracts with four gas producers in the Fayetteville Shale region reserving 92.5 percent of the

pipeline's capacity. These contracts expire in 2020 and 2021 and pay FEP roughly $55 million a year regardless of the amount of gas carried through the pipeline. The pipeline went into operation in 2012.

On March 27, 2014, FEP filed its 2014 ad valorem tax report for the year ending December 31, 2013. Based on the information provided by FEP, the Tax Division prepared FEP's 2014 ad valorem tax assessment, showing a total unit value of $886,387,572, resulting in an Arkansas-assessed value of $149,580,000.

FEP filed a petition for review with the Commission challenging the assessment. In its petition, FEP argued that the Tax Division had failed to consider certain conditions, such as that the market for natural gas had substantially declined, causing FEP's pipeline to be underutilized. FEP also argued that the Tax Division had failed to consider economic obsolescence. FEP noted that the Federal Energy Regulatory Authority (FERC) had allowed some 770 miles of mainline transmission pipeline to be abandoned, including 725 miles that FEP described as being essential to the original purpose of constructing FEP's pipeline. FEP further argued that the Tax Division applied an improper capitalization rate. FEP also asserted that the assessment was arbitrary, not supported by substantial evidence, manifestly excessive, clearly erroneous, and confiscatory. The Tax Division filed a response asking that FEP's petition for review be denied.

A hearing was held before the ALJ, who eventually affirmed the Tax Division's assessment of FEP's property in Order No. 9. In doing so, the ALJ found that FEP had failed to present sufficient evidence to show that the Tax Division's treatment of obsolescence in its cost approach resulted in a manifestly excessive, clearly erroneous, or confiscatory assessment.

SLIP OPINION

The ALJ further found that the Tax Division had the discretion to consider economic or functional obsolescence in valuing taxable property and that FEP had failed to meet its burden of demonstrating that the Tax Division abused its discretion or that its failure to consider functional or economic obsolescence rendered the assessment incorrect in measuring the fair market value of FEP's property. The ALJ next addressed the Tax Division's consideration of FEP's future income, noting that Arkansas Code Annotated section 26-26-1607 (Supp. 2015) neither specifies how far into the future the Tax Division must consider future income nor requires the Tax Division to project the future income of a company. According to the ALJ, the statute only requires that the Tax Division consider a company's future income stream and that it did so. Although noting that the Tax Division had a preference for company-specific capitalization rates where possible, the ALJ found that FEP failed to submit information for the Tax Division to calculate a company-specific capitalization rate for FEP and that FEP's calculation of an individualized capitalization rate was based on comparison companies dissimilar to FEP. The ALJ found that FEP had failed to prove that the Tax Division's assessment was incorrect in measuring the fair market value of FEP, and FEP had not met its burden to overturn the assessment. The ALJ concluded that the assessment was proper, reasonable, and in the public interest.

FEP filed its "Petition for Rehearing" from Order No. 9 with the Commission, arguing that the Tax Division should have considered economic obsolescence; should have developed a specific, individualized capitalization rate; and should have used an average of FEP's income over a three-year period instead of a two-year average.

In its response, the Tax Division argued, among other things, that FEP was insulated from the market conditions of the Fayetteville Shale by having guaranteed contracts through 2020 and 2021. It further argued that the methods FEP used to show economic obsolescence—underutilization and the income shortfall methods—had previously been rejected by the Commission and by the Arkansas Supreme Court. The Tax Division also argued that it did not abuse its discretion by failing to make an adjustment for economic obsolescence.

After the Commission had denied FEP's petition for rehearing in Order No. 11, FEP sought review of that order in the circuit court.[1] FEP argued that Order No. 11 was unlawful for many of the same reasons stated in its petition seeking review of the assessment. These included that the Tax Division failed to consider FEP's undisputed evidence as to the market conditions in the Fayetteville Shale, including that FEP is entirely dependent on production from the Fayetteville Shale and the underutilization of FEP's pipeline. FEP further argued that the Tax Division failed to properly consider the imminent termination of contracts that provide over 90 percent of FEP's revenue. According to FEP, the Tax Division misapplied section 26-26-1607 by failing to properly consider economic obsolescence. The Tax Division answered, asking that the petition be denied.

Following briefing and oral argument before the circuit court, the court ruled from the bench. The court affirmed the Commission's assessment as supported by substantial evidence,

---

[1]In its Order No. 11 denying FEP's petition for rehearing, the Commission did not make any factual findings or specifically adopt the ALJ's Order No. 9. Rather, the Commission simply denied FEP's petition for rehearing.

not clearly erroneous, and that the ad valorem assessment of the FEP natural-gas pipeline of $886,387,572 was not confiscatory or manifestly excessive. This appeal followed.

## II. *Arguments on Appeal*

On appeal, FEP argues (1) that the Commission violated Ark. Code Ann. § 26-26-1607 by failing to consider the undisputed market evidence that establishes economic obsolescence; (2) that the Commission erred by refusing to make findings based on evidence submitted by FEP and by giving preclusive effect to prior Commission orders where FEP was not a party; (3) that the Commission committed errors of law by rejecting generally accepted methods of calculating economic obsolescence; (4) that the Commission erred by concluding that depreciation always accounts for economic obsolescence; (5) that the Commission's income approach was excessive by using too much income at too high of a capitalization rate; and (6) that the Commission erred by imposing additional requirements that are not prescribed in Arkansas Code Annotated section 26-26-1610.

## III. *Standard of Review*

Our standard of review, mandated by the legislature, does not extend any further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commission has regularly pursued its authority. *Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). Our supreme court has held that it is not within the province of the courts of this state to assess property, but only to review those assessments. *Id.* The burden is on the party protesting the assessment to show that the assessment is manifestly excessive, clearly erroneous, or confiscatory. *Id.* It is only in the most

exceptional cases that an appellate court will grant a reassessment. *IBM Credit Corp. v. Pulaski Cty.*, 316 Ark. 580, 873 S.W.2d 161 (1994).

IV. *Discussion*

The central issue in this appeal is whether the Tax Division and, ultimately, the Commission, properly considered FEP's evidence purporting to show that the pipeline was economically obsolete when it reviewed the assessment of FEP's property. Our supreme court has stated,

> Economic obsolescence, as used with respect to valuation of property for taxation, is "a loss of value brought about by conditions that environ a structure such as a declining location or down-grading of a neighborhood resulting in reduced business volume." *Black's Law Dictionary* (5th ed. 1979).

*Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 307 Ark. 171, 177, 818 S.W.2d 935, 938 (1991). In determining fair market value, Arkansas Code Annotated section 26-26-1607(b)(1) authorizes the Tax Division to use various cost approaches such as the original cost less depreciation and the replacement cost less depreciation.[2] The Tax Division is also allowed to consider functional or economic obsolescence as part of this approach. *Id.*

The decision in *Arkansas Electric Cooperative* is dispositive on these points and requires that we affirm the assessment. In that case, the supreme court noted that a 1980 amendment changed section 26-26-1607(b)(1) from mandatory (shall) to directory (may). The court held that the language of the statute vested the Tax Division with both the option and the discretion to consider economic and functional obsolescence in valuing taxable property. In that case, as in the present case, the Tax Division contended that it did consider obsolescence in valuing

---

[2]Section 26-26-1607(b) also provides for consideration of other valuation approaches for the assessment of property. They are the stock-and-debt method and the income method.

the taxpayer's property because an implicit component of the depreciation subtracted from the original cost is obsolescence.

Although FEP cites *Arkansas Electric Cooperative* in its briefs, it does not discuss its holding that section 26-26-1607(b)(1) gives the Tax Division the option and discretion to consider economic obsolescence in its valuations. Instead, FEP argues that the Tax Division violated section 26-26-1607 by failing to consider what FEP characterizes as its undisputed evidence concerning negative economic conditions in the Fayetteville Shale field as part of its argument that there should be an adjustment for economic obsolescence. The supreme court's holding in *Arkansas Electric Cooperative* that consideration of obsolescence is optional and discretionary means that the Tax Division can, but is not required to consider physical or economic obsolescence in valuing a company. Thus, FEP must show that the Tax Division abused its discretion in failing to consider FEP's evidence of economic obsolescence.

Here, the Commission found that the Tax Division did not abuse its discretion in not making an additional adjustment for obsolescence, because the Commission had held that depreciation implicitly takes into account factors such as the obsolescence of an asset. The Commission further found that FEP's FERC forms do not show any obsolescence beyond the reported amount of depreciation. FEP does not argue that the Commission erred in these findings or that the Tax Division abused its discretion in not considering obsolescence. It is an appellant's burden to demonstrate and explain reversible error. *See Tri-Eagle Enters. v. Regions Bank*, 2010 Ark. App. 64, 373 S.W.3d 399; *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). Here, the parties' experts testified as to their methodologies; however, neither expert testified that the other's methodology was wrong. To the contrary, both Mark Andrews (FEP's

7

expert) and the Tax Division reached the same valuation figure using the cost approach before Andrews applied a discount for economic obsolescence.

Contrary to FEP's argument, *Jim Paws, Inc. v. Equalization Board of Garland County*, 289 Ark. 113, 710 S.W.2d 197 (1986), *does not require* that an adjustment for economic obsolescence be made. Rather, that case stands for the proposition that an assessor cannot simply rely on one method to establish the fair market value of the property or company being assessed. Here, unlike the assessor in *Jim Paws*, the Tax Division considered both the replacement cost and income approaches to arrive at its assessment.[3]

There is no merit to FEP's argument that because the Tax Division rejected FEP's two proposed methods for calculating economic obsolescence (the income-shortfall and the underutilization or utility methods), it was required to provide some alternative method for calculating obsolescence. It did. Brent Eyre testified on behalf of the Tax Division that he tested for obsolescence by performing a market analysis to examine the market-to-book ratio of various companies. The resulting overall ratio was 1.91, which Eyre said indicates no obsolescence. Andrews testified that Eyre did not perform an appropriate test to determine economic obsolescence; however, he did not explain how or why Eyre's test was not appropriate. It was FEP's burden to do so. *Tri-Eagle Enters.*, *supra*.

FEP's main point in support of its argument that there is economic obsolescence is that its firm contracts, which reserve approximately 92 percent of its pipeline cap6acity, expire in 2020 or 2021; therefore, they need to be considered in making the current assessment. Section 26-26-1607(b)(3)(B) provides that the "utility operating income to be capitalized

---

[3]Neither FEP nor the Tax Division relied on the stock-and-debt method of valuation.

should be determined by reference to the company's historical income stream, appropriately weighted, with consideration to the future income stream." Both experts testified that they considered FEP's contracts in arriving at their respective valuations. Neither of them could testify about FEP's future income after the expiration of the contracts because it would be sheer speculation. Tax Division's Sarah Bradshaw testified that seven years was too far into the future to make accurate predictions of future income. Section 26-26-1607 requires only *consideration of* the company's future income stream. All three experts testified that they gave consideration to FEP's future income stream.

FEP attempts to distinguish the supreme court's decision in *Ozark Gas Pipeline*, *supra*, from the present case on the basis that it was a known fact as of January 1, 2014, that FEP's contracts would expire in 2020 or 2021. In *Ozark Gas Pipeline*, it was also known, however, that, as of the dates of the 1995 and 1996 assessments at issue, the capacity payments, like those in the present case, would expire in 1997. 342 Ark. at 594, 29 S.W.3d at 731. The supreme court held that the pipeline company had not shown that the Tax Division had not appropriately considered historical income and future income stream, as section 26-26-1607(b) requires, other than to disagree with the weight given to the income method. *Id.* at 601-02, 29 S.W.3d at 735-36.

The Tax Division's use of only two years of FEP's income, as well as its use of an industry-wide capitalization rate, was not error. Both are matters of skill and judgment on the part of the appraiser that go to the weight to be given to the valuation by the Commission. *See Ozark Gas Pipeline Corp.*, 342 Ark. at 601, 29 S.W.3d at 735.

As to the use of a two-year average for FEP's income instead of a three-year average, the Commission found that FEP's 2012 income did not accurately reflect FEP's value because FEP was being paid for less than full capacity for the first year, and that would not reflect the remainder of FEP's contracts. The Commission further found that FEP was guaranteed a stable level of income until the expiration of its contracts. FEP does not challenge these findings.

The Commission also found that FEP failed to provide sufficient evidence to enable the Tax Division to calculate an individualized capitalization rate for FEP. Although Andrews testified that FEP provided the Tax Division with more information than in previous years, the Commission found that both he and FEP failed to identify this additional information. The Commission further found that the companies FEP used to determine its capitalization rate were not sufficiently similar to FEP to support their use in calculating the capitalization rate. We cannot say that these findings are clearly wrong.

FEP argues that our holding in *McDaniel v. Arkansas Public Service Commission*, 2014 Ark. App. 529, 444 S.W.3d 380, requires reversal because the Commission did not make findings regarding FEP's evidence concerning economic obsolescence. We disagree that *McDaniel* requires reversal. First, the statute at issue in the present case has been interpreted to give the Tax Division both the option and the discretion to consider economic obsolescence. The Commission found that FEP failed to show that the Tax Division had abused its discretion in failing to consider economic obsolescence. FEP does not argue that there was an abuse of discretion. In fact, FEP does not even acknowledge the Tax Division's broad discretion.

Nor has preclusive effect been given to earlier Commission proceedings. Although the Commission relied on an earlier Commission ruling in determining that depreciation implicitly takes into consideration the obsolescence of an asset, it did not give preclusive effect to that ruling. Instead, the Commission relied on the fact that FEP's FERC form showed no obsolescence beyond the reported depreciation. The Commission's prior ruling that rejected the income-shortfall method could be seen as having preclusive effect, but the Commission noted that FEP offered no evidence to address the Commission's concerns with that method.

We cannot reach the merits of FEP's argument that the Tax Division's failure to consider economic obsolescence violated professional appraisal standards because its abstract does not demonstrate that the argument was raised below. The Tax Division argued that the issue was being raised for the first time on appeal. In its reply brief, FEP cites the transcript of the prefiled surrebuttal testimony of Mark Andrews. However, none of the references appear in Andrews's abstracted testimony. It is fundamental that the record on appeal is confined to that which is abstracted, and we will not reach the merits of an issue when the documents or proceedings that are necessary for an understanding of the issue are not abstracted. *Middleton v. Lockhart*, 364 Ark. 32, 216 S.W.3d 98 (2005); *Boatmen's Tr. Co. of Ark. v. Hous. Auth. of N. Little Rock*, 346 Ark. 192, 57 S.W.3d 132 (2001); *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997).

Moreover, we cannot find where either the Commission or the circuit court ruled on the issue. When the appellate court has no ruling on an issue from either the administrative agency or the circuit court, arguments pertaining to that issue are not preserved for our review. *See Louisiana v. Joint Pipeline Grp.*, 2010 Ark. 374, 373 S.W.3d 292; *Seiz Co. v. Ark. State Highway*

*& Transp. Dep't*, 2009 Ark. 361, 324 S.W.3d 336; *Ark. Wildlife Fed'n v. Ark. Soil & Water Conservation Comm'n*, 366 Ark. 50, 233 S.W.3d 615 (2006).

Affirmed.[4]

VIRDEN, HARRISON, KLAPPENBACH, GLOVER, and BROWN, JJ., agree.

*Corbitt Law Firm, PLLC*, by: *Chris P. Corbitt*, for appellant.

*Justin A. Hinton* and *Dawn Kelliher Guthrie*, for appellee.

---

[4]We cannot consider the Tax Division's argument that the circuit court never acquired jurisdiction over FEP's appeal to that court because FEP failed to exhaust its administrative remedies before the Commission by prematurely filing its petition for rehearing from the ALJ's Order No. 9. The Tax Division failed to file a notice of cross-appeal. The failure to do so left the circuit court's order denying the motion to dismiss unchallenged on appeal and not preserved for our review. *Protect Fayetteville v. City of Fayetteville*, 2017 Ark. 49, 510 S.W.3d 258; *Landers v. Stone*, 2016 Ark. 272, 496 S.W.3d 370; *Gallas v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007).