II. Standard of Review and Relevant Law
Our review is directed not to the decision of the circuit court, but rather to the decision of the administrative agency. Burton v. Ark. Dep't of Human Servs. , 2015 Ark. App. 701, 478 S.W.3d 221. Review of administrative agency decisions, by both the circuit court and the appellate courts, is limited in scope. Id. The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. Id.
An appellate court sitting in review of a finding of an administrative agency must affirm the agency's finding if the finding is supported by any substantial evidence. Ark. Code Ann. § 25-15-212(h). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, giving the evidence "its strongest probative force in favor of the administrative agency." Reed v. Arvis Harper Bail Bonds, Inc. , 2010 Ark. 338, 368 S.W.3d 69.
As with all appeals from administrative decisions under the Administrative Procedure Act, the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h). In this appeal, WN argues that the agency's order should be reversed because it was in violation of all six of the factors listed above. WN also appeals the circuit court's decision that WN's name appear in all pleadings.
The Arkansas Child Maltreatment Act defines child maltreatment as "abuse, sexual abuse, neglect, sexual exploitation, or abandonment[.]"
*491 Ark. Code Ann. § 12-18-103(7). "Neglect" includes acts or omissions of a parent that constitute a failure to appropriately supervise the child that results in the child's being left alone at an inappropriate age creating a dangerous situation or a situation that puts the child at risk of harm; or the child being left in inappropriate circumstances creating a dangerous situation or a situation that puts the child at risk of harm. Ark. Code Ann. § 12-18-103(14)(A)(vii)-(viii).
The Act provides that for any act or omission of child maltreatment that would be a criminal offense, any defense or affirmative defense, including the burden of proof regarding the affirmative defense, that would apply to the criminal offense is also cognizable in a child-maltreatment proceeding with the exception of lack of capacity as a result of mental disease or defect under § 5-2-312. Ark. Code Ann. § 12-18-804. Arkansas Code Annotated section 5-2-301(7)(A)(i) defines mental disease or defect as "[s]ubstantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life[.]"
III. Issues on Appeal
A. The Sufficiency of the Evidence
1. The protocols
WN raises several arguments regarding the sufficiency of the evidence to support the ALJ's finding that WN neglected TN through inadequate supervision. A common element appears in each sufficiency argument: that the Act requires a "conscious act or omission in disregard of the caretaker's responsibility to protect a child in a potentially dangerous situation." We disagree with WN's interpretation of the Act and affirm; however, first we address a preservation issue. One aspect of WN's sufficiency argument involves the interaction between the agency protocols and the Act and what effect this interaction has on the definition of neglect by inadequate supervision. This issue is not preserved for our review.
The Department of Human Services and the Department of Arkansas State Police are required to promulgate rules or "protocols" to implement the Child Maltreatment Act. See Ark. Code Ann. § 12-18-105. The protocols identify and define the various types of child maltreatment that an investigator may encounter, when and from whom a report of child maltreatment may be taken, and the conditions that must be met before an allegation of neglect can be founded.
One section of the protocols WN cites entitled "Taking a Report" requires that the reporter of suspected child maltreatment have "reason to believe that the juvenile has been/is being inadequately supervised due to the disregard of responsibilities by the parent or caretaker." (Emphasis supplied.) On appeal, WN argues "[t]he protocol interprets the statute to require findings of disregard of parental responsibility to find inadequate supervision constituting neglect[.]" WN asserts that the undisputed evidence shows that he had no awareness that TN was in the vehicle when he exited it without removing TN from the car seat; thus, the agency did not prove the required element of "disregard" for a parental responsibility.
Though the ALJ heard extensive testimony and argument regarding the interaction of the protocols and the statute, appellant did not obtain a ruling on the issue; thus, it is not preserved for our review. See Mountain Pure, LLC v. Little Rock Wastewater Util. , 2011 Ark. 258, 383 S.W.3d 347 (It is the appellant's obligation to raise an issue first to the administrative agency and obtain a ruling thereupon to preserve an argument for appeal.). This case demonstrates the importance of our *492 requirement that a ruling must be obtained to preserve an issue for review. Here, WN raised several issues to the ALJ regarding the protocols, including but not limited to the meaning of the word "disregard" as used in the protocols, the possible conflict between the Act and the protocols, the role of the protocols' investigatory requirements that do not appear in the statute, and the question whether the statute supersedes the protocols. Without a ruling from either the administrative agency or the circuit court regarding the role of the protocols, this complex issue is not preserved for our review. Fayetteville Express Pipeline, LLC v. Ark. Pub. Serv. Comm'n , 2017 Ark. App. 557, 533 S.W.3d 106. We note that appellant seems to imply that the ALJ erred when it entered an opinion that "did not address the perceived conflict between the statute and protocol; in fact, the ALJ did not in his decision mention the protocol at all." If WN desired a specific ruling regarding the applicability of the protocols, it was his burden to obtain a ruling. We simply cannot review a ruling that was never made.
Because the issue of whether the Act violates due process ties in with the applicability of the protocols, we will address WN's constitutional argument here. WN did not develop before the ALJ the issue of whether the Act violates due process because it does not provide adequate notice of the prohibited conduct. Constitutional issues must first be raised and developed at the administrative level. Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy , 2010 Ark. 40, at 6, 358 S.W.3d 890, 895. When presented with an allegation that a statute or regulation is unconstitutional, this court must review the decision of the circuit court because an administrative agency lacks the authority to rule on a constitutional argument. Arkansas Tobacco Control Bd. v. Sitton , 357 Ark. 357, 166 S.W.3d 550 (2004). Even so, in an appeal originating from an agency decision yet involving a constitutional challenge, the constitutional challenge must be raised before the agency to preserve it for the circuit court's consideration. Landmark, supra.
At the administrative hearing, WN briefly touched on the issue of due process during closing argument. WN argued that
I want to say for record purposes that the fact that the agency is taking a position contrary to its own protocols is a violation of due process. Nobody can know what they are supposed to do to be on adequate notice if the agency's taking contrary positions in similar proceedings so are we to follow the protocols, are we to follow Mr. Barnes new version of the statute? That's not the way this is supposed to work, we're all supposed to know what standards we are to live by.
This statement does not adequately develop the constitutional argument before the ALJ; thus, the issue is not preserved for our review.
2. Case law
Another facet of WN's sufficiency argument involves our courts' interpretation of the Child Maltreatment Act. WN argues that our appellate courts have required conscious disregard of the responsibility to protect a child in a potentially dangerous situation when reviewing a finding that neglect by inadequate supervision has occurred. We disagree with WN's characterization of our case law.
WN argues that Arkansas Department of Human Services v. Bixler , 364 Ark. 292, 219 S.W.3d 125, 129, demonstrates that "courts interpreting the Act considered what a caretaker 'should have known' only to the extent the evidence indicated the caretaker knew of circumstances creating a risk, yet disregarded a duty to protect the child from it." In Bixler , the ALJ ruled *493 that neglect by inadequate supervision occurred and that
[t]here was sufficient evidence that the Bixlers knew or should have known that their children's step-grandfather was a convicted sexual offender, and that after the death of the children's grandmother, the Bixlers had a duty to inquire about the "rumors" of his prior offense. The ALJ further ruled that the Bixlers should have assured that their children were not left alone in Roger's presence, particularly overnight. The ALJ ruled that the Bixlers' actions constituted a violation of Ark. Code Ann. § 12-12-503(12)(G) because the Bixlers allowed their children to be left alone overnight in the home of a convicted sexual offender.
Id. at 298, 219 S.W.3d 125, 129 (2005).
WN contends that by affirming the ALJ our supreme court held that the issue of neglect by inadequate supervision must involve an evaluation of "whether the caretakers put the children at risk by consciously acting or failing to act in the face of an appreciable potential for harm[.]" We agree that in Bixler the Arkansas Supreme Court held that foreseeability of harm and the awareness of dangerous circumstances are two factors relevant to the assessment of whether neglect by inadequate supervision has occurred. These two factors do not apply to whether the parent consciously disregarded caretaking responsibility as WN argues. Instead, the foreseeability of harm and awareness of a dangerous circumstance are relevant to the circumstances that the child is placed in, and the foreseeability of harm if left alone in that situation. The application of Bixler to the instant case is clear: WN placed TN in a car seat in a car on a hot day, a known potentially dangerous situation. TN was left alone in that situation, and the foreseeability of harm in that circumstance is also clear; thus, the ALJ's finding of neglect by inadequate supervision comports with our case law.
WN cites Arkansas Department of Human Services v. Koprovic , 2012 Ark. App. 645, 2012 WL 5438952, in which this court reversed the ALJ's decision that a father had neglected his 22-month-old foster child by failing to adequately supervise her. In Koprovic , the father left MM playing in the yard with her siblings, among whom were 11-year-old twins, BeK and BrK. When the father called the children in for dinner, MM did not come in, and he ran outside to find her floating face down in the pool. MM sustained injuries from the incident. Koprovic told investigators that he believed that the gate surrounding the pool was locked and could not be opened by the children. There was evidence that the Department of Human Services was aware of the pool, that Koprovic was subject to monthly and quarterly home visits by the caseworker and a home specialist, and that Koprovic had never been reprimanded or informed of any safety issues in the home or yard. Also, one of the siblings told investigators that the general rule was that they were required to stay with MM if she was playing outdoors. Koprovic is distinguishable from the instant case. There, the father was mistaken as to the existence of the dangerous condition that the pool was in fact accessible. By contrast, here, the potential for harm of an enclosed car on a hot day is clear.
WN also argues that in Figueroa v. Arkansas Department of Human Services , 2013 Ark. App. 83, 2013 WL 548916, our court held that a culpable mental state was necessary to found an allegation of neglect by inadequate supervision. We disagree with WN's characterization of the holding and hold that Figueroa is distinguishable from the instant case. In Figueroa , the father lost track of the knife he had used to cut down his wife's body after she had *494 committed suicide by hanging. Later, Figueroa's minor son cut his hand on the knife. Under those unique circumstances, our court found that "[t]he mother's suicide was a traumatic event for both Figueroa and his children, and it is understandable that Figueroa lost track of the knife after he cut his wife's body down." Id. at 5. We did not hold that a culpable mental state was required for a finding of inadequate supervision, and we disagree that the Figueroa holding compels reversal in the instant case.
Neglect by inadequate supervision does not require a culpable mental state because it is defined in the Act outside of the criminal code. See Ark. Code Ann. § 5-2-204(c)(2)-(3). In closing argument before the ALJ, counsel for WN stated, "The maltreatment act is designed to target parents or caregivers who are careless, reckless, don't care what harm might result from their actions." However, it is precisely that language describing a culpable mental state that the legislature specifically excluded from the statute.
With that in mind, we turn to the basic question of whether the evidence was sufficient to support the ALJ's finding of neglect by inadequate supervision. We hold that it is, and on this point we affirm.
The Act provides that the agency was required to prove that TN's caretaker failed to appropriately supervise TN, and that WN's act or omission resulted in the child's being left alone at an inappropriate age creating a dangerous situation or a situation that put the child at risk of harm; or that the child was left in inappropriate circumstances creating a dangerous situation or a situation that put the child at risk of harm. See Ark. Code Ann. § 12-18-103(14)(A)(vii)-(viii). The relevant evidence is as follows. WN was responsible for taking TN to daycare the morning of July 24, 2015. WN strapped the child in the car seat, and at some point in his journey WN lost awareness of TN's presence in the car and failed to remove TN from his car seat. It was a hot day, with temperatures reaching the nineties. The ALJ concluded that "[t]his act or omission placed TN in inappropriate circumstances creating a dangerous situation and in a situation that put TN at a risk of harm." Giving the undisputed evidence presented by the parties its most probative force, we hold that the agency's decision is supported by substantial evidence. When the agency's decision is supported by substantial evidence, it follows that the decision cannot be classified as arbitrary and capricious. Teston v. Ark. State Bd. of Chiropractic Exam'rs , 361 Ark. 300, 305, 206 S.W.3d 796, 800 (2005).
B. Errors in the ALJ's Order
1. Criminal-negligence standard
On appeal, WN asserts that various errors in the ALJ's opinion resulted in prejudice to him and that we must reverse. We disagree. Though WN correctly asserts that the ALJ erred when it referred to the criminal-negligence standard, he has not demonstrated resulting prejudice. The appellate court may reverse the agency decision if it concludes that the ALJ's decision was affected by error of law and the substantial rights of the petitioner have been prejudiced. Ogborn v. Ark. Dep't of Human Servs. , 2017 Ark. App. 600, 532 S.W.3d 621.
The Child Maltreatment Act does not require a mens rea element, as we discussed above. See Short v. State , 349 Ark. 492, 496, 79 S.W.3d 313, 316 (2002). However, the ALJ's final order states that, according to the Act, "the acts or omissions must be negligent. The person's failure to be aware of the substantial risk to the child must be a gross deviation from what a reasonable person would do in the same situation." WN argues that the ALJ
*495 erred because the negligence standard he recites in the order is not a part of the Act. The criminal code defines "negligently" as follows:
(A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.
(B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.
Ark. Code Ann. § 5-2-202(4) (Repl. 2006).
It is not clear from the order that the ALJ relied on the criminal-negligence standard in making its decision because the first and last paragraph of the decision closely track the language of the Act, and the ALJ clearly based its decision on the statutory language; however, even if the court did rely on an incorrect standard, WN cannot show prejudice because applying the criminal-negligence standard only heightens the standard by which the ALJ could find that neglect by inadequate supervision occurred. We hold that WN has failed to demonstrate how his substantial rights were prejudiced by the ALJ's erroneous reference to the criminal-negligence standard.
2. Lack of capacity due to mental disease or defect
WN also alleges that the ALJ erred when it rejected the affirmative defense of lack of capacity by mental disease or defect and that he suffered prejudice as a result. Specifically, WN argues that he never asserted the defense; thus, it was error for the ALJ to address it in the order and that prejudice resulted from this error because it shows that the ALJ acted arbitrarily and capriciously. We disagree.
Arkansas Code Annotated section 12-18-804 provides that any defense or affirmative defense that would apply to the criminal offense is also cognizable in a child-maltreatment proceeding with the exception of lack of capacity as a result of mental disease or defect under § 5-2-312. WN argues that he never raised this defense; however, WN did assert that because of stress and lack of sleep and the brain's reaction to those factors, he lost awareness of TN's presence in the car and was unable to adequately supervise TN. In support of this argument, Dr. Diamond testified that
[t]he reason I believe that this is not a situation in which he failed to properly care for his son is that this is a case of in a sense brain failure. This is where the brain shifts to a mode in which you lose awareness of the child in the car. So this is a failure of the brain to function properly at that moment and it is not a conscious act.
....
As to whether, at the moment that WN left that car with TN in it, he had the brain capacity to make a decision to protect T.N. in that moment, in that moment his brain had shifted two things, to the autopilot mode and so he had lost awareness of TN in the car.
....
As to whether, at that moment, he had the mental capacity to make any decision other than to get out of the car and leave TN in it, he did not have the mental capacity at that moment to ... Absolutely not, he did not have the mental capacity at that moment to make a decision to protect TN by removing him from the car, no.
*496 WN's expert witness repeatedly used the phrase "lack of capacity" and WN placed his mental capacity at issue by arguing that due to lack of sleep, stress, and other factors, his brain functioned differently than it would if it were not experiencing those unusual conditions, and as a result, he was unable to adequately supervise his child. Furthermore, the Act specifically excludes lack of capacity caused by mental disease or defect, and the ALJ's reference to the Act in question is not error under the circumstances presented here. See Ark. Code Ann. § 12-18-804(2). Even if the ALJ erred by addressing a perceived issue, no prejudice results because the evidence is sufficient to support the finding of neglect by inadequate supervision. See Teston, supra.
3. Dr. Diamond's testimony
Because the issue regarding the weight of Dr. Diamond's testimony dovetails with WN's argument regarding the lack-of-capacity-defense, we discuss it here. WN argues that the ALJ did not properly consider Dr. Diamond's testimony regarding "lost awareness" and how it related to whether WN committed child maltreatment. Specifically, WN asserts that "[t]he ALJ arbitrarily and capriciously disregarded Dr. Diamond's testimony as supporting only a "lack of capacity" defense and based this finding, and thus its ultimate decision, on a fundamental error of law.... WN's brain functioned in the same way any person's normal brain would function under the same circumstances." Essentially, WN urges this court to give more weight to Dr. Diamond's testimony and treat it as empirical evidence that is not open to interpretation. WN states that Dr. Diamond's testimony is "basic neuroscience [that] applies to the function of every person's brain, which has been confirmed even by brain imaging [.]"
In the order, the ALJ stated that
Dr. Diamond maintains that WN's act was not about neglect or a disregard of his responsibilities. He maintains that it was about brain failure. WN's brain lacked the capacity at that moment to function properly. Even if Dr. Diamond's analysis is accepted, WN's lack of mental capacity is not a defense as that defense is specifically excluded in the Child Maltreatment Act.
....
Dr. Diamond's explanation of why WN forgot TN was in the car is plausible.... Dr. Diamond stated that this is a fairly common human problem, not only in regard to children but gave other examples of simply losing awareness. I do understand that this is a result of human frailty and is a human failure, but it is a failure.
Dr. Diamond's testimony is undisputed, and the ALJ credited his testimony as being "plausible"; however, the ALJ declined to treat the testimony as empirical evidence that stress and pressure causing lost awareness can only be seen as "how normal human memory works." The ALJ clearly weighed Dr. Diamond's testimony and ascertained that the human brain malfunctions-in other words, fails to work normally-when a person is sleep-deprived and experiencing unusual stress. This court may not simply substitute its judgment and discretion for that of the administrative agency. Bixler , supra . It is also the prerogative of the agency to believe or disbelieve the testimony of any witness and to decide what weight to give the evidence. Ark. State Police Comm'n v. Smith, 338 Ark. 354, 994 S.W.2d 456 (1999).
C. Void for Vagueness
WN argues that the Act is unconstitutionally vague because the definition of neglect does not provide adequate notice *497 of the prohibited behavior. Our review of the abstract and addendum does not show that WN raised this argument to the ALJ; thus, we are barred from review of the issue. In an appeal originating from an agency decision involving a constitutional challenge, the constitutional challenge must be raised before the agency to preserve it for the circuit court's consideration. Reed v. Arvis Harper Bail Bonds, Inc. , 2010 Ark. 338, at 4, 368 S.W.3d 69, 72-73.
D. The Circuit Court's Decision to "Unseal" the Case
WN appeals the circuit court's decision to require that his name appear in full on the pleadings. This issue is moot. As a general rule, the appellate courts of this state will not review issues that are moot. Terry v. White , 374 Ark. 387, 391, 288 S.W.3d 199, 202 (2008). To do so would be to render advisory opinions, which this court will not do. Id. We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. Id. In other words, a moot case presents no justiciable issue for determination by the court. Id. Our supreme court granted WN's motion to seal the case on September 28, 2017. The purpose of WN's motion was to remove WN's name from all documents related to the case, which was accomplished by the court's order; thus, the issue is moot.
Affirmed.
Harrison and Klappenbach, JJ., agree.